SOUTH & N. A. R. CO. (VAUGHAN v.). See Case No. 16,901.

SOUTHARD (LYMAN VENTILATING & REFRIGERATOR CO. v.). See Case No. 8,633.

---

## Case No. 13,182.
### SOUTHARD v. RAILWAY PASSENGERS' ASSUR. CO.

[34 Conn. 574; 1 Bigelow, Ins. Cas. 70.]

District Court, D. Connecticut. July 6, 1868.

ACCIDENT INSURANCE—VIOLENT AND ACCIDENTAL MEANS—MAXIM "EXPRESSIO UNIUS EST EXCLUSIO ALTERIUS."

[1. A rupture effected by the insured's jumping from cars, or by running to see if they were coming, where he acted for his own convenience, and not from perilous necessity, and without stumbling, slipping, or falling, is not an injury caused by "violent and accidental means," within the condition of an accident policy.]

[2. The exception in a policy insuring against injuries effected by "violent and accidental means" of certain causes named, does not broaden the policy so as to include injuries not effected through forcible and accidental means.]

On submission to SHIPMAN, District Judge, as arbitrator.

[This was an action on a policy of insurance by William L. Southard against the Railway Passengers' Assurance Company.]

SHIPMAN, District Judge.[1] This is a claim made by William L. Southard against the above-named company, for bodily injuries alleged to have been received by him, and by reason of which he avers that he was totally disabled for a considerable time, and prevented from the prosecution of any and every kind of business. The claim is founded upon a policy of insurance, issued to the claimant by an agent of the company, dated the 21st day of February, 1867, and having three months to run. The company not agreeing to the claim made upon them, both parties have submitted the following questions to the undersigned as arbitrator: (1) Did the alleged injury result from an accident within the meaning and intention of the contract? (2) Was the disability a consequence of disease existing prior or subsequent to the contract? (3) Is it a case of total disability from all kinds of business?

The contract of insurance made with the claimant is as follows: "The Railway Passengers' Assurance Company of Hartford insures William L. Southard, of Portland, Maine, against accidental loss of life, in the principal sum of five thousand dollars, to be paid to his family, or their legal representatives, within ninety days after sufficient proof that the insured, at any time within the term of this policy, shall have sustained bodily injuries, effected through violent and accidental means, within the intent and meaning of this contract and the conditions hereunto annexed, and such injuries shall have occasioned death within ninety days from the happening thereof; or if the insured shall sustain bodily injuries, by means as aforesaid, which shall absolutely and totally disable and prevent him from the prosecution of any and every kind of business, then, on satisfactory proof of such injuries, he shall be indemnified against loss of time, in a sum not exceeding twenty-five dollars per week, for a period of continuous total disability not exceeding twenty-six consecutive weeks from the time of the accident and injuries as aforesaid."

To this main clause of the policy there are attached certain provisions and conditions, among which are the following: "Provided always, that this insurance shall not extend to any injury of which there shall be no visible sign, nor to any death or disability which may have been caused wholly or in part by bodily infirmities or disease, existing prior or subsequent to the date of this contract, or by the taking of poison, or by any surgical operation or medical treatment for disease. And no claim shall be made under this policy, when the death or injury may have been caused

---

[1] Though this case was one of arbitration, it was argued and decided wholly upon legal principles, and the opinion, which was written by Judge Shipman, will be regarded by the profession as having the authority of a judicial decision.

by dueling, fighting, or wrestling; or by over-exertion, or lifting (except in cases of perilous necessity); or by suicide (felonious or otherwise, sane or insane); or by sun-stroke; or by concealed weapons, carried by the insured; or when the death or injury may have happened in consequence of war, riot, or invasion, or of riding or driving races, or of unnecessary exposure to danger or peril, or of violation of the rules of any company or corporation; or when the death or injury may have happened while the insured was, or in consequence of his having been, under the influence of intoxicating drinks, or engaged in any unlawful act." Also, "The party insured is required to use all due diligence for personal safety and protection."

Upon the evidence submitted to me, I find the following facts: In February, 1867, the claimant, Mr. Southard, was temporarily sojourning, with his family, in Philadelphia, and occasionally passing over the railroad, to and from Baltimore, Newcastle, and perhaps other places, purchasing and shipping corn and flour. On the 20th of that month, while on the road from Baltimore to Philadelphia, he was handed an advertisement, purporting to be of this company, and had some conversation with the person who gave him the advertisement about insurance of this character in which the company was engaged. The next day (February 21st) he went to the office of the company's agent in Philadelphia, made a contract for insurance, paid the premium of ten dollars, and took a receipt. The policy he received at a subsequent time, and to that we must look for the precise contract upon which the present claim is founded. The same evening Southard went by train to Newcastle, Delaware, on business, and made an engagement to meet a man at the depot the next morning, before 8 o'clock, at which time the train started. He went to the depot as agreed, but did not find the man whom he expected. He went on board the train, which passed out from the depot, and switched back on a side track, when he went to the rear end of the train, to inquire of the conductor if he would know the man he was looking for. The conductor informed him that there were two depots at that place, one about three-quarters of a mile distant, and that there was probably some mistake between Southard and the man he had agreed to meet, as to which depot the interview was to take place at. At this point Southard concluded to leave the train, and, somewhat excited, as he says, jumped off from the rear end of the train. He felt no shock, and walked briskly to the other depot, where he found the man he was in search of. He remained there till about time for the next train, and then returned to the other depot. While going back, he heard what he supposed to be the train coming in, started suddenly, and ran to where he could see, and found that it was not the train, when he walked the rest of the way to the depot, took the cars, and returned to Philadelphia. Some time during the

journey from Newcastle to Philadelphia; and on the same day, he felt pain about one knee, but did not refer it to his movements at Newcastle. After he arrived at Philadelphia, and had transacted some business, he called on a physician, and consulted him about dyspepsia, an old complaint with which he had for some time been more or less afflicted. The physician, while examining his person, found a partially developed rupture on his right loin. Southard then referred it to his jumping off the cars, or to his running at Newcastle. This rupture increased, and finally, for several weeks, disabled him from business. For this disability he claims a weekly compensation, under his policy, for the time it continued. The company deny that it is within the scope of their contract.

All the facts in regard to the alleged cause of the injury are derived from the statements of the insured. I assume their correctness, and that he was totally disabled for several weeks in consequence, and proceed to consider whether or not the contract of insurance covered the injury from which he suffered.

The policy is one of indemnity against "bodily injuries effected through violent and accidental means, within the meaning of this contract, and the conditions hereto annexed." Had the terms of the contract stopped at the words "violent and accidental means," there would be no difficulty, in my judgment, in disposing of the questions; for there was no accident, strictly speaking, in the means through which the bodily injury was effected. It would not help the matter to call the injury itself—that is, the rupture—an accident. That was the result, and not the means through which it was effected. The jumping off the cars, or the running, was the means by which the injury was caused. Both were done by the claimant voluntarily, in the ordinary way, with no unforeseen, accidental, or involuntary movement of the body whatever. There was no stumbling, or slipping, or falling. There was nothing accidental in his movements, any more than there was in his passing down the steps of his hotel, or in his walking on the street, during each of which he might have had a stroke of apoplexy, or a hemorrhage, a rupture of a blood-vessel in the head or the lungs. True, in jumping from the cars and running there was more violence, or, properly speaking, more force; but there was no more accident than in any ordinary movements of the human body. How, then, admitting the rupture to have been effected by jumping from the cars, or by running to see if they were coming, can it be said that it was caused by accidental, as well as violent, means? All the accident there was, was the result of ordinary means, voluntarily employed, in a not unusual way.

But the words "violent and accidental means" are followed in the policy by the words "within the intent and meaning of this contract and the conditions hereunto an-

nexed." Now, we are to consider how far the former words are qualified by the other parts of the contract, or by the conditions thereto annexed. I have cited from the policy all that can have any bearing on the question. The provision which I have cited from the policy excludes from indemnity death or injury when caused by dueling, concealed weapons, when carried by the insured, fighting, wrestling, over-exertion and lifting (except in case of perilous necessity), suicide, sunstroke, and also "death or injury happening in consequence of war, riot, invasion, riding or driving races, unnecessary exposure to danger or peril, or violation of the rules of any company or corporation." It also excludes "death or injury happening while the insured is, or in consequence of his having been, under the influence of intoxicating drinks, or engaged in any unlawful act." Now, it may be said that this specific exclusion from the scope of indemnity of death or injury happening from causes and under circumstances expressly set forth leaves, by fair implication, death or injury from any other causes, and under all other circumstances, included in the contract of indemnity; thus logically inverting or complementing the maxim. "Expressio unius est exclusio alterius." But in applying this well-known rule of construction, reference must be had to the main body of the contract, and to its subject-matter. It is not, nor does it purport to be, a contract of indemnity against death or injury effected by all means. The cause of the death or injury must, in all cases, be "violent and accidental," or the event is without the scope of the contract. The instrument, by its terms, embraces only cases where the elements of force and accident occur in effecting the injury. The cases excluded are only those which belong to the same class. The contract declares to the insured that, though he may be killed or injured through violent and accidental means, yet, if the calamity occurs under certain circumstances, the insurers will not be liable. Violent and accidental death or injury might occur, and often does occur, under the circumstances enumerated in the excluding clause. The contract, as I have already intimated, in its broadest scope only embraces within its indemnity personal injuries effected through forcible and accidental means; and the proviso simply excludes from this class of injuries all that occur under the circumstances enumerated. All others of this class are included.

The degree of violence or force is not material; and had the insured, in this case, in jumping from the car, lost his balance and fell, or struck upon some unseen object, and wounded himself, or, in running, had stumbled, or slipped on the ice, his injury might be attributed to accidental as well as violent means, and, assuming that there was no want of due diligence on his part, his misfortune would have been covered by the policy. But, as I have already stated, the injury which he received was in no sense the result of accident. He jumped from the car with his eyes open, for his own convenience, and not from any perilous necessity. He encountered no obstacle in doing so. He alighted erect on the ground, just as he intended to do. So in running. He ran from no peril or necessity, but for his own convenience, voluntarily, and, from all that appears, without stumbling, slipping, or falling. In both cases he accomplished just what he intended to, in the way he intended to, and in the free exercise of his choice. No accident of any kind interfered with his movements, or, for an instant, relaxed his self-control. All that he claims is that, some hours after, it was discovered that a muscle in the walls of the abdomen had given way under the strain to which he had voluntarily put it, under circumstances free from all peril or necessity. Assuming that this rupture was caused either by his jumping or running, or both does not help the matter, unless we call running and jumping accidents.

I therefore am of opinion that the alleged injury did not result from an accident, within the meaning of the contract. This disposes of the whole case; and it follows that Mr. Southard has no valid claim on the company.