## Case No. 17,566.

### WHITEHOUSE v. TRAVELERS' INS. CO.

[7 Ins. Law J. 23.] [1]

Circuit Court, D. New Hampshire.   Oct., 1877.

ACCIDENT INSURANCE — CONSTRUCTION OF POLICY —EXTERNAL SIGN OF INJURY—RIGHT TO EXAMINE DECEASED.

[1. An intention on the part of the company to deceive cannot be presumed from the fact that some portions of the policy are printed in smaller type than other portions, the former being referred to in the latter.]

[2. Nor is the fact that the company made an autopsy on deceased's body any evidence of fraud, when the right to do so is given by the policy.]

[3. A nose bleed may be regarded as an "external and visible sign" of the injury, within the meaning of a provision that the insurance shall not extend to any injury of which there is no such sign.]

[Cited in Wehle v. United States Mut. Acc. Ass'n, 31 N. Y. S. 868.]

CLARK, District Judge (charging jury). The plaintiff in this case is Ephraim H. Whitehouse, administrator of the estate of Horace Gowan. He is the nominal party upon the record of the court, entitled to bring the action; but the person for whose benefit the sum sued for is to be recovered, if recovered at all, is Mrs. Gowan, the widow of Horace Gowan. He seeks to recover upon a policy of insurance against death resulting from accident, by which the sum of three thousand dollars was insured, in case of his death by accident, to be paid to his wife; the allega-

---

[1] [Reprinted by permission.]

tion being that death happened to him by accident, and that the company has not paid the same to his widow, or wife, as agreed. The suit is for the violation of that contract, for the benefit of the wife. The suit was originally brought in the state court, as was suggested to you, and has been removed by due process of law from the state court into this court. Comments were made, on the one side and the other, upon the transfer of the cause from the state court to this court, as if it might be a matter of prejudice to the defendant, that he had transferred the cause into this court. But it cannot be so, gentlemen. The right which the law gives him, or gives the defendants, to transfer the cause here, would be of little, or very much less, value, if upon the trial, it was to tell against them. But for certain reasons, in certain causes, the law of the United States provides that causes may be transferred from the state courts into the United States courts, and there tried. Complying with that law, this cause has been transferred here, and the consideration of that transfer may be laid entirely out of the case by you, and receive no consideration whatever. It is not a matter with which you have to do in finding your verdict, in any way. It was a right which the defendant had. It is to be presumed, or it is to be taken for granted, that he exercised that right properly and · rightfully. The state court would not have transferred the cause here, and this court would not have received and would not try the cause, unless it had been properly brought there. Justice, gentlemen, is said to be blind; and this is true, and should be true in one regard: that she is blind to the parties, as they stand before her. She cannot be blind as to the cause and witnesses and testimony, because, if she were, she never would decide the cause rightly, unless by accident; but, as to the parties, she holds her scales even, or should, and she is blind. You are the organs, gentlemen, of justice. If she be blind as to the parties, you must, if you would do justice, also be blind as to the parties. You must not know this defendant as a corporation. Holding the scales evenly between the two, you must say what is the fact, upon the evidence. It is a high duty, gentlemen; it is a difficult duty. There is a reason to believe that jurors do not always act with these high motives, but the court has no doubt in this cause. that. disregarding all considerations and suggestions of that kind, you will turn your attention to the evidence on the points of the case. and decide by the evidence. The cause is not very wide in its scope. The facts are few. The evidence is somewhat voluminous, and the witnesses, numerous; but the evidence and witnesses are to be received and weighed by you as bearing mainly upon two or three important facts. There may be other facts which tend to decide these two or three important facts, which you will consider; but

what I mean is, that the evidence all hinges on, or is chiefly applicable to, two or three important questions.

But, before I come to these questions, I want to make a suggestion or two to you, which are called out by the counsel on the one side and the other, and principally by some remarks of the counsel for the plaintiff, in regard to fraud in this case. It is a well-established maxim of law, gentlemen, that fraud never is to be presumed. That is, you are never to take it for granted that people have acted fraudulently; you are rather to take it that they have acted honestly, until the evidence shows you that they have acted otherwise. Now it is contended by the plaintiff's counsel that this company have been fraudulent in this transaction, in the issuing of this policy; and he adduced as proof the fact that certain portions of the policy are printed in smaller letters than other portions, contending that the intention was to deceive; because, if there were no intention to deceive, there would not be any fraud. It is alleged that fraud consists in the use of smaller type in certain parts of the policy. But if you will examine this policy, you will find that the conditions relied upon are referred to in the large type, and the attention is called to them in such a way as entirely to negative the idea that the company meant to conceal them. I say this much to you on this point because it seemed to me, I frankly say, that the evidence did not seem to warrant the remarks of counsel. I have not the least doubt, gentlemen, that the counsel was well-intentioned in the matter. He put forward the best side of his case, but I felt it due to you, due to justice, that I should make the above statement.

I shall have occasion to say one thing, if I do not forget it, in regard to the autopsy. Perhaps I might, as well say it here, lest I should forget it, as at any other time. Complaint was made by counsel for the plaintiff that this defendant exercised the privilege, if you call it so, or that he undertook to make an autopsy when this man was lying dead, before he was buried. Now if you will examine this policy, gentlemen, you will find here a provision made for that very purpose,—a provision in this policy that in case of death, or any other time, when accident occurs, the company shall have the right to examine, and you will see the necessity of it, gentlemen. I comment now upon this, as it was adduced as evidence of fraud. You will see the necessity of such a condition or right as this in insurance policies, where a man might die and be buried, and it be alleged afterward that the death was caused by accident, whereas, if an autopsy had been made, it might have been shown otherwise; or, where death did not occur, it might be shown what the disability was, or the extent of the accident was. to know how much should be paid. So, having secured that right, gen-

tlemen, to make that examination, it was only exercising a right which they had by their contract.

But the plaintiff says further to you, gentlemen, that they called the agent of the company, and did not call the attending physician, to make such autopsy; but, gentlemen, it was no more the part of the defendant company to call the attending physician, than it was of Mrs. Gowan. If she wanted him there, it was very easy for her to call him in; and you will weigh, gentlemen—you will weigh the considerations as showing to you whether this defendant practiced any fraud in this regard, and give such weight as it deserves. If there was fraud, or improper acts, on the part of the defendant, of course you will give the plaintiff the benefit thereof, and it will be the duty of the court to instruct you so to do; while, on the other hand, the court feels bound to say that the plaintiff cannot set up fraud on the part of the defendant, unless he produces evidence of it. The contract provides, gentlemen,—I will read it, gentlemen,—"The said sum insured to be paid to Sarah F. Gowan, wife, or her legal representatives, within ninety days after sufficient proof that the insured, at any time within the continuance of this policy, shall have sustained bodily injuries, effected through external, violent. and accidental means, within the intent and meaning of this contract, and the conditions hereunto annexed, and such injuries alone shall have occasioned death within ninety days from the happening thereof; or if the insured shall sustain bodily injury by means aforesaid, which shall, independently of all other causes. immediately and wholly disable and prevent him from the prosecution of any and every kind of business, then, on satisfactory proof of such injuries, he shall be indemnified against loss of time thereby, in a sum not exceeding twenty-five dollars per week for such period of continuous total disability as shall immediately follow the accident and injuries aforesaid, not exceeding. however, twenty-six consecutive weeks from the time of the happening of such accident;" and all this, gentlemen, in large print. It goes on: "Provided always, that this insurance shall not extend to any injury of which there shall be no external and visible sign, nor to any case except where the injury aforesaid is the proximate and sole cause of the disability or death." That is in small type, but in large type, "Provided that the accident shall be the sole cause of death."

Now in order to enable the plaintiff to recover under this policy, gentlemen, it is incumbent on the plaintiff to prove to you that this injury or accident was the cause of death, and the sole cause. It is also incumbent on him to prove that the injury or accident left some external, visible mark of its happening, or of injury to the person. and, if he fails to prove either of these points,

he must fail in his case; because, gentlemen, a policy of insurance is a contract to be governed by the rules applicable to other contracts generally, and parties are not to be held liable for that which they do not undertake, or for that to which they do not agree, and in this case it was agreed between the parties that this plaintiff should not recover in case of death, unless an accident is solely and independently the cause of death. That is the undertaking. It is also agreed between the parties that this plaintiff should not recover unless the accident left signs of the injury, external and visible, and neither you nor the court, gentlemen, have any right to travel out of this contract, and beyond it, and say that the party shall pay the sum, unless liable under this contract; and I might say, gentlemen, that it would be little less than judicial robbery, if, going outside of the contract, from any motive not arising within, and proper for the court, the defendant should be compelled to pay; but, gentlemen, on the other hand, if this accident has happened, and has come within the terms of the contract, it is the right of the plaintiff to recover this amount, and it would be your duty so to award it. The plaintiff is entitled to the full benefit of this contract, interpreted fairly and properly, equally with the defendant.

Now, then, with these views, gentlemen, you will approach the evidence and see what it tends to prove. Of some things there is no dispute,—they may be taken for granted. I think it is not disputed that this is the contract made by the parties; it is not disputed that proper notice was given to the defendant upon the happening of this accident; it is not disputed—no question has been made—but what this plaintiff here is the administrator of Gowan's estate, though no proof of it has been given. It seemed to be taken for granted. Unless he were the administrator, as claimed, he could not recover; but I take it for granted he is. There is no dispute that on the twenty-ninth of May, 1875, Horace Gowan was thrown from his wagon. thrown on the ground. and the seat of the wagon thrown on him; that he recovered himself, got up from the ground. took up the seat, and went to the stable; that at that time, when inquired of if he was hurt. he said, "No" or "Not much." "He guessed not," and that afterward he complained of injury in the head and back, soreness in his side; that on Monday he did not labor much, if any, nor Tuesday. nor Wednesday. I think so much has been shown by the evidence, and will be admitted, so that there can be no question in regard to these facts. On Thursday, or some time after, — I don't know as it appeared exactly when; I understood. however, one witness to say on Thursday. he took his bed; by another witness about a week after the accident,—but on some day, took his bed, and

the sickness ran on until the twenty-third day of June, when he died. Now you will see, gentlemen, it becomes material for you in the first instance, to inquire whether the injury received in this case was such that it left visible, external marks. I think it is admitted by the plaintiff's counsel that no witness has testified that it did; but counsel say that it may be inferred from the circumstances, that you may suppose that it was so. Now, if the evidence, gentlemen, satisfies you, if the evidence satisfies you there were external marks, you may so find, but you cannot suppose it, if the evidence does not tend to show it. Things are not to be taken as suppositions, which are required for the fulfillment of a contract; they are bound to prove it. But, gentlemen, visible signs of an injury would not be confined to scratches or bruises, or broken limbs; there might be other indications, as, for instance, if you were satisfied that the nosebleed that he had at some times was the direct result of an injury, then that would be visible, would be a sign; but the complaint of pain is no visible sign, because that is something you cannot see; the complaint of soreness is no sign, because that you cannot see. The policy provides it shall be, visible,—something that can be seen; so if you were satisfied, gentlemen, even after two or three weeks, that the bloody discharges from the bowels was the direct result of the injury, that would be received as a visible sign of injury; but if it did not result directly from that, it would not be; and I call your attention to this point of the case first, gentlemen, because, if the evidence satisfy you that, notwithstanding he fell and was sore and stiff, if it satisfy you there was no visible sign of injury, you would be bound to find for the defendant, and in this connection you may weigh the complaint made by him to Dr. Stackpole. Dr. Stackpole was his attending physician, and you may inquire if Dr. Stackpole had been told of this accident, whether he would not have examined so as to have seen; and, further, you may inquire whether there would not have been at the autopsy something to show, externally, that there was an injury received. But, gentlemen, if upon the evidence, you should be satisfied there was an external, visible injury, your next inquiry will be, what was the cause of the death? And here the court say to you, gentlemen, in order to entitle the plaintiff to recover, you must find that the accident,—the falling from the wagon and the bruise,—was the direct cause of the death; because, by the contract, the defendants undertook to pay this money only upon condition that the accident alone, independent of every other cause, occasioned the death. It may be said, gentlemen, that this is strange and severe, but it is precisely the thing that this plaintiff, or the intestate, Mr. Gowan, agreed to. He agreed, that he

was only to have this sum paid to his wife in case of his death, when the death resulted only from the accident. Now it is contended on the part of the plaintiff, gentlemen, that the death did result directly from the accident, and that is a question for you to determine. It is contended, on the other hand, that it did not result wholly from the accident, but that it resulted from some supervening or intervening cause, such as disease. Now this may be difficult for you to determine, but you must bring to it the best consideration you can upon the evidence that is before you.

The science of medicine, gentlemen, is an uncertain science, but the medical men are the best evidence we can have upon certain points; because they are men supposed to be informed, and there are no other persons supposed to be so well informed. We will not say how well they may be informed, or whether they can always tell the actual condition of a patient, or cause or character of a disease, or whether they do not miss it a great many times: but is there anybody any better informed in subjects or matters incident to their profession? And in this case they are the only witnesses before you, and you must be governed by their testimony. They are the only witnesses put before you by which you can judge what was the nature of the disease, or what was the cause of death. I am not going to recapitulate minutely that testimony. I am not going to take up the testimony of one physician or another, and detail to you the substance, or the exact words of what each one said. You will remember it, gentlemen, and you will give due attention to it, and such weight as you think it deserves. But because I do not call your attention to it, you will not therefore disregard it. I am not much in the habit of calling the attention of the jury to the evidence, unless on important points, because you as jurymen sit here, and hear the testimony, as well as myself, and you are peculiarly the judges of the testimony, and the effect to be given to it. I am not to say, gentlemen, how much weight is to be given to the testimony of Dr. Stackpole, of Dr. Jewett, of Dr. Ham, or of any other one of the witnesses who have been put on the stand; that is your duty,—your privilege. You might say, "I believe this man;" I might say, "I do not." Your belief is to govern, not mine. But sometimes when there is doubt in what has been said, then reference may be had to the minutes of the court, or, if there has been a stenographer, to his minutes, to the minutes of the counsel. In this case, Mr. Gowan, received an injury, in a few days took his bed; it appears, from the testimony of Dr. Stackpole, had feverish symptoms, some headache, and that he treated it in a certain way, but that Dr. Stackpole did not at any time suspect there was an injury which was the cause of the condition of the patient, until he was told. That after he had been sick for some two or three weeks—I think three weeks—the day before he died, Dr. Jewett was called in as

consulting physician, and he testified that the man was then in a dying condition, and I do not remember that the doctor said that he gave his opinion of what he thought was the matter with him. I do not remember that there was any discussion at that time, or anything said between Drs. Stackpole and Jewett that the man had received an injury. But the disease or sickness ran along, until as said before, on the twenty-third day of June he died. Then the counsel for the defendant went to the house, and requested from Mrs. Gowan a statement of the case, a history of it, and she gave it; then they made an examination or autopsy of the body. Now, the physicians tell you, gentlemen, what is the benefit of an autopsy or examination, and how much they can tell, or what they can tell, in certain cases thereby; and those who made it say to you, gentlemen, and those who saw it, that they were certain sure indications found that this man died of typhoid fever, and it does not appear that that examination showed any other cause of death. I think one of the witnesses said the parts—the upper parts—were healthy, but it does not appear that they discovered any injury, or any appearance of an injury, from the accident which happened, but that they did discover a certain condition of the glands and parts of the smaller and larger intestines, which certainly marks typhoid fever. Now, here comes in your duty, gentlemen, to judge between what is said on the one side between the happening of the accident, between the falling of the man from the carriage, between his complaints of pain in his head, and pain in his shoulder, and of the general feverish symptoms, and of this condition of the bowels after death, and then it is for you to say what was the probable cause of that death. If you find that the probable cause of the death upon the testimony was the accident, and that directly and independently of any other cause, then you will find for the plaintiff; but if you should find, gentlemen, that the accident was not the cause of death, or that the accident would not have produced death unless fever set in, or some other disease, then you must find for the defendant, because this will govern the case. The contract was that this accident, solely and independently of any other cause, should occasion the death to entitle to recover.

Some things have been said, gentlemen, in regard to some of the witnesses in this case, some of the physicians, that they had never seen a case like this, or had never seen an autopsy in a case of typhoid fever; that what information they had was from the books. We all know, gentlemen, that experience is a good teacher, though old President Lord, at Dartmouth, used to say she was sometimes rather hard; but a great deal of the information that a physician gets he must necessarily get from his books, and because he gets his information from books he is not therefore to be cast out and laid aside; but you are to weigh him as you would any other man, with the knowledge, experience, and information that he has. You would give to the man who had seen a great many cases more credit than you would to one who had not seen them. By way of illustration: I can remember very well where in a case of smallpox in a family, two parties died and were buried, and only until the third person was attacked, and another physician was called, was the disease ascertained, the symptoms are so varied and uncertain. So these physicians say that in the first two or three weeks the symptoms of some diseases do not manifest themselves, so they are able to say certainly what the disease is. That may be called the infirmity of human nature, the uncertainty of a professional man, who cannot see what does not show itself. He may judge or guess. Some symptoms are common to various diseases, but you will judge, on the whole, gentlemen, on the description given you by all the physicians, whether this was a case of accident occasioning death directly, or whether it was a case of accident where another disease supervened, and was in part or wholly the cause of death. As I said before, if you should find that typhoid fever supervening was wholly or in part the cause of death, you must find for the defendant; but if, on the other hand, gentlemen, you are satisfied that death resulted directly from this accident, you should find for the plaintiff, because it was undertaken by the defendant that in the case of death resulting entirely from accident, no other cause supervening or aiding, they would pay three thousand dollars; and, if it did so happen, this plaintiff in interest is entitled to have that sum at your hands.

If you should come to the conclusion, gentlemen, that the plaintiff is entitled to recover, he would be entitled to recover the sum of three thousand dollars and interest from the day that the provision in the policy provides, within ninety days after proof thereof. Ninety days from the second of September would be the time interest should be cast, some time in December the interest would begin to run. If then, gentlemen, on the whole case you should find that the plaintiff, upon the points I have suggested to you, is entitled to recover, you will take the sum of three thousand dollars, and cast the interest upon it from ninety days after the second of September, 1875. It would be some time in December.

That, I think, gentlemen, is all that is necessary that I should say to you in regard to this case.

One suggestion, perhaps, I ought to make to you, gentlemen, and that is, you cannot adopt a theory without proof. You would not be justified to find that this party died by accident or died by fever, unless you are satisfied, upon the proof, that there was fever; neither would you be justified in finding that he died from a shock to the spine or brain, unless there was proof.

The jury found a verdict for the defendant company.