MARY E. HILL, APPELLANT, *v.* THE HARTFORD ACCI-DENT INSURANCE COMPANY, RESPONDENT.

*Accident insurance policy—when death is not occasioned by external and violent means—construction of a proviso excepting from insurance deaths caused by poison.*

The defendant issued a policy of insurance upon the life of one John A. Hill, in the sum of $2,000, to be paid to the plaintiff, his wife, upon proof that the insured " shall have sustained bodily injuries effected through external, violent and accidental means within the intent and meaning of this contract, and the conditions hereto annexed, and such injuries alone shall have occasioned death. . . . Provided always, that this insurance shall not extend . . . to any death or disability which may have been caused wholly or in part . . . . by the taking of poison . . or by suicide, felonious or otherwise, sane or insane." In the course of his business, Hill, who was a physician and surgeon, mixed some poison with water in a goblet, and thereafter, mistaking the mixture for pure water, and without any intention of taking his life, drank it, and subsequently died from its effects.
In an action brought by the plaintiff upon the policy,
*Held,* that the death was not " effected through external, violent and accidental means," as those terms were used in the policy.
That the proviso, excepting from the insurance a death caused " by the taking of poison," was not limited to cases of intentional self-poisioning, but included all cases in which the death was so caused. (FOLLETT, J., dissenting.)

APPEAL from a judgment in favor of the defendant, entered upon the trial of this action by the court without a jury.

The action was brought upon a policy of insurance issued by the defendant on December 17, 1874, upon the life of one John O. Hill, in the sum of $2,000, payable in case of loss to the plaintiff, his wife. The policy provided that the said sum should be paid " within ninety days after sufficient proof that the insured at any time within the continuance of this policy shall have sustained bodily injuries effected through external, violent and accidental means within the intent and meaning of this contract, and the condition hereto annexed, and such injuries alone shall have occasioned death within ninety days from the happening thereof. ، . . Provided always that this insurance shall not extend to any bodily injury of which there shall be no external and visible sign ; nor to any bodily injury happening directly or indirectly in conse-

quence of disease, nor to any *death* or disability which may have been caused wholly or in part ·by bodily infirmities or disease existing prior or subsequent to the date of this contract, or by *the taking of poison;* . . . . and no claim shall be made under this policy, where the death or injury may have been caused by duelling, fighting, wrestling, lifting, or by over-exertion (or by suicide, felonious or otherwise, sane or insane), or by sunstroke, freezing, or self-inflicted injuries."

The judge before whom the action was tried, found "that the said John O. Hill, within the continuance of the Policy, accidentally took poison, by drinking the same in water from a glass in his own hand which caused cramps, spasms, rigidity of the muscles, locking of the chest, and blackening of the face before death, and was the sole cause of death, and he died by reason of taking of said poison within a few hours after the taking of the same. That when he took it he was well, and did not knowingly or intentionally take the poison. That he did not know he was taking poison when he took it, that he did not intend to commit suicide when he took it, that he took it accidentally and without any knowledge or intention of taking the same. That there were no external or visible signs of injury except the blackening in the face and the apparent rigidity of the muscles, cramps and locking of the chest. And that the said Hill sustained no bodily injuries effected through external, violent and accidental means. That the plaintiff is the payee named in the policy. That proofs of the death were duly served on the company on February 14, 1875."

*Charles G. Day,* for the appellant.

*Orlow W. Chapman,* for the respondent.

BOCKES, J. :

We are of the opinion that this case was properly decided by the learned judge before whom it was tried.

The policy provided for indemnity against ˙two classes of accidents; one which should occasion the death of the insured within ninety days from the happening thereof; the other against injuries

which should prevent him from the prosecution of his ordinary business. The claim in this case is made by reason of an accident which occasioned death.

It was provided in the policy of insurance, that payment in such case could be required only on sufficient proof, that the insured "sustained bodily injuries effected through external violent and accidental means;" and that such injuries alone "occasioned death," and it was also declared that the insurance should not extend to *any death* caused by the "taking of poison."

The insured died suddenly from taking poison. He took it by mistake. He took it without knowing that he was taking poison, and without any intention to take poison or to do himself an injury, and the taking of the poison, or its action was the sole cause of death. His death, as we think, must be deemed to have occurred through accident or through accidental means.

Then was the injury which "occasioned death" effected through external and violent means? We think not. The injury was effected (caused) through the action of the poison internally. Death was not caused by any external act; nor by anything acting externally, and certainly not by any violent external means. This view of the case is supported too by the decision in *Bayliss* v. *Travellers' Ins. Co. of Hartford* (MS. opinion of BENEDICT, J.).

But the case is made unanswerably in favor of the defendant, as we think, inasmuch as the insurance did not extend to and cover a case of death "caused by the taking of poison." Here the death of the insured was undeniably so caused. This was the sole cause of his death, and death so caused was excepted from the policy in express terms. That the poison was taken unintentionally can make no difference in giving construction to the exception. This fact made the cause of death in this case accidental; hence the necessity of the exception in case the insurance was to extend to and cover this particular accidental cause. Nor is the exception limited to cases of intentional self-poisoning. That it was not intended to be so limited is manifest from the fact that there is another provision in the policy, which declares that no claim could be made under it, where the death or injury shall have been caused by suicide, felonious or otherwise, sane or insane.

We are of the opinion that the judgment for the defendant must be affirmed.

LEARNED, P. J., concurs.

FOLLETT, J., dissenting :

The insured was a physician and surgeon, and insured as such. In the course of his business, he mixed poison and water in a goblet, and afterwards, mistaking the mixture for water, drank it, from the effects of which he shortly died.

It was a case of accidental poisoning, as found by the court, but the court held, as a matter of law, that the accident was not covered by the policy.

The policy is termed a " General Accident Policy," which name was selected and applied by the defendant as fairly descriptive of the contract, and undoubtedly with the intent to induce the belief that such was the character of the instrument. General terms intended to characterize an instrument with the public, and printed in large type for the purpose of arresting attention, should have great weight in the construction of limitations and provisos inconsistent with the general terms.

The central idea of the policy is partial indemnity against loss by accident. Such was the understanding of the insured when he purchased it, and that such would be its effect, the insurer intended that the insured should understand.

" To reach and carry the intention of the parties into effect, the law, when it becomes necessary, will control even the literal terms of the contract, if they manifestly contravene the purpose ; and many cases are given in the books in which the plain intent has prevailed over the strict letter of the contract." (2 Kent Comm., 554, 555.)

The engagement (aside from the provisos), is to pay the sum specified in the policy, if the insured within a time limited die from " bodily injuries effected through external, violent, and accidental means, within the intent and meaning of the contract and the conditions hereto annexed."

The defendant claims that it is exempt from liability under-

the policy on three grounds : (1) That death was not effected through external means. (2) That death was not effected through violent means. (3) That the death is within the following proviso : " Provided always that this insurance shall not extend to any bodily injury . . . or death . . . caused . . . by the taking of poison."

External is exterior, visible, apparent ; (Webster). Means is that which is used to effect an object, and in the sense used in the policy, is synonymous with cause.

Internal means are causes occurring and operating within the body of the insured, and effecting death by unapparent and invisible means or causes. Such risks are not assumed under the policy.

External means are exterior, visible and apparent means, or causes. Mistaking the poison for water, drinking it, and its action on decedent's system was the means or cause of death. The means, or cause, was partly external and partly internal. The mistake, and the act of drinking were external, visible, and apparent ; the immediate action of the poison was internal, though external as well as internal in its effect.

The court finds that the poison caused " cramps, spasms, rigidity of the muscles, locking of the chest, and blackening of the face before death." It killed the insured. The accident (as before stated), consisted in mistaking poison for water, and from this accident, this means, this cause, death ensued. The accident was external ; the injury is not the accident, the means, or the cause, but the result. (*Southard* v. *Railway Passenger Assurance Co.*, 34 Conn., 574.)

Exhibitions of physical force, have, through fright, caused death, though the victim was untouched.

The effect may be said to be internal, but the means, the cause, is apparent, visible, external, though operating internally as well as externally. We cannot divide in twain the whole-continued cause, or means, and say the defendant is not liable because part of the cause, and its most immediate effect, was internal.

In the language of the policy, the cause of death was not unknown, or incapable of "direct and positive proof." It was in-

tended by this language to exempt the defendant from liability for injuries arising by accident within the system without an external-apparent, visible, violent, and accidental cause, but not to exempt it from liability for such internal causes of death as are directly traceable to external, visible, apparent, violent, and accidental means. (*Fitton* v. *Accidental Insurance Co.*, 17 C. B. N. S., 122.) In *Reynolds* v. *Accidental Ins. Co.* (18 Weekly Rep., 1141; 22 Law Times, 820), the insured, while bathing in a shallow stream, became insensible from some internal cause, fell with his face downwards, and drowned. In *Winspear* v. *Accident Ins. Co.* (42 Law Times, N. S., 900; 22 Alb. Law J., 223), the policy insured against "any personal injury caused by accidental, external, visible, means." The insured while fording a stream, had an epileptic fit, fell into the stream, and was drowned. In both cases, the deaths were held accidental, occasioned by external and visible means. The mistake, the accident, was the immediate cause of death, within the meaning of the policy, though the operation of the poison intervened, and caused death.

The operation of the poison, flowing as it did in this case, immediately, and with absolute certainty from the mistake, or accident, the mistake, and the operation of the poison are not (upon principle and authority), divisible into primary and secondary causes, but constitute a single, continued cause, and covered by the policy. (*Fitton* v. *Accidental Ins. Co.*, *supra; Reynolds* v. *Accidental Ins. Co.*, *supra; Winspear* v. *Accidental Ins. Co.*, *supra; N. A. Life and Accidental Ins. Co.* v. *Burroughs*, 69 Penn. St., 43.) In the case last cited, death occurred from peritoneal inflammation caused by a hay-fork slipping through the hands and striking the abdomen of the decedent. No external bruise was discovered. The death occurred five days after the accident, and it was held to have resulted from the injury, notwithstanding the intervention of the disease which the insurer claimed was the secondary and immediate cause of death.

The means were violent; not natural, spontaneous; and not occurring from usual and natural causes. The degree of force or violence is not material. (*Southard* v. *Railway Passenger Assurance Co.*, 34 Conn., 574.)

Accidental death from drowning while bathing has been held to be "death from external violence." (*Trew* v. *Insurance Co.*, 6 H. & N., 845, and cases before cited.) If the most violent meaning is to be given to the word "violent," but few cases of accidental injuries would be covered by such policies.

Is the defendant exempt from liability because the insured died "by the taking of poison"? A proviso is to be strictly construed so as not to take a case within the general terms of the contract, out of it, unless the case is clearly excepted by the proviso, is within the reason thereof, and within the intent of the parties.

I think the word "taking," in this connection, means an intentional taking, either with or without intent to destroy life, and that this phrase is intended to exempt the insurer from liability for accidents arising from the intentional use of poison. Such, I think, was the understanding of the parties.

If the insured had died from the taking of poison into his system from an accidental cut in a dissecting or operating room, or from taking poison into his system from the bite of a venomous serpent, neither would, perhaps, have been within the technical meaning, nor within the popular meaning of death by taking poison, and, therefore, not excluded by the proviso from the risks insured against. In the construction of statutes and contracts, the ordinary and popular meaning is to be given to words and terms employed. (*Schriefer* v. *Wood*, 5 Blatchf., 215; *Jackson* v. *Topping*, 1 Wend., 388; Sedgwick on Stat. and Const. Law, 2 ed., 225; Potter's Dwarris, 193.) If the case at bar is excluded from the policy by the exception, I think the two supposed cases would be; for the liability in such instances cannot be dependent upon the introduction of poison by methods other than swallowing.

Policies exempting insurers from liability in case of the death of the insured by suicide or by his own hand, are construed to mean intentional suicide, or intentional death by his own hand, by a sane person, capable of having and carrying into effect a rational intent. *Bayles* v. *Insurance Co.* (14 Blatchf., 143) is not germain to any question arising in this contention. In that case, the policy exempted the insurer "from liability for death or disability caused wholly or in part by medical treatment for disease." Death was

caused by taking opium. It was not taken accidentally, but intentionally, upon the prescription of a physician in the course of "medical treatment for disease," and the decision is placed upon that ground.

This policy is not a compact, but a unilateral obligation, which is to be taken most strongly against the party executing it. This has been the rule for the construction of such instruments since deeds poll were first used (2 Blacks. Comm., 308); and it has usually been followed in construing policies of insurance, notices issued by express companies, telegraph companies, and common carriers. From the whole instrument, read in the light of the object to be attained, I cannot doubt that the true intention of the parties was to provide compensation in case of death from such an accident as occurred to the decedent. Policies of insurance should be liberally construed, so as to carry into effect the intention of the parties, and save, instead of destroying the contract.

"When the terms of a promise admit of more senses than one, the promise is to be performed in that sense in which the promisor apprehended at the time that the promisee received it." (2 Kent Comm., 557.) The judgment should be reversed, and a new trial granted, costs to abide the event.

Present—LEARNED, P. J., BOCKES and FOLLETT, JJ.

Judgment affirmed, with costs.