### BARRY v. UNITED STATES MUTUAL ACCIDENT ASS'N.

*(Circuit Court, E. D. Wisconsin.   March, 1885.)*

1. ACCIDENT INSURANCE—ALLEGED INJURY—QUESTION FOR JURY.
     In an action on an accident insurance policy the question whether deceased was injured by jumping from a platform as alleged, is a question of fact for the jury to determine from all the circumstances of the case as shown by the evidence.

2. SAME—"ACCIDENTAL" DEFINED.
     The term "accidental" as used in an accident policy is used in its ordinary sense, and means "happening by chance, unexpectedly, or not as expected."

3. SAME—"ACCIDENTAL MEANS" DEFINED.

4. SAME—"EXTERNAL AND VISIBLE SIGNS OF INJURY"—INTERNAL INJURY.
     An injury that is internal may afford external indications or evidences, which are visible signs of the injury within the meaning of such term as used in an accident policy.

5. SAME—"SOLE AND PROXIMATE CAUSE OF DEATH."
     In an action on an accident policy where it is shown that the deceased sustained an accidental injury to an internal organ, and that necessarily produced imflammation, and that produced a disordered condition of the injured part, whereby other organs of the body could not perform their natural and usual functions, and in consequence the injured person died, the original injury will be considered as the proximate and sole cause of death; but if an independent disease or disorder, not necessarily produced by the injury, supervened upon the injury, or if the alleged injury merely brought into activity a then existing but dormant disorder or disease, and death resulted wholly or in part from such disease, the injury cannot be considered the sole and proximate cause of death.

At Law.

C. M. Bice, for plaintiff.

Finches, Lynde & Miller, for defendant.

DYER, J., *(charging jury.)*   On the twenty-third day of June, 1882, the defendant association issued to John S. Barry, then residing at Vulcan, Michigan, but since deceased, what may be termed a contract of insurance, by which it agreed to pay his wife, Theresa A. Barry, a sum not exceeding $5,000, within 60 days after sufficient proof that, at any time within the continuance of membership of Dr. Barry in the association, he had sustained bodily injuries, effected through external, violent, and accidental means, and that such bodily injuries alone had occasioned death within 90 days from the happening thereof.   This is a suit brought by the beneficiary named in the policy to recover the amount of the insurance.

It is alleged that the deceased sustained an injury, within the meaning of the policy, on the twentieth day of June, 1883, and it is proven that he died on the twenty-ninth day of that month.   There is no question, therefore, that if he was injured as claimed, he died within the time after the alleged injury named in the policy; nor is there any question that the policy was in force at the time of his death. By the terms of the policy it was provided, as already stated, that to entitle the beneficiary to the sum of $5,000, the death should be oc-

casioned by bodily injuries alone, effected through external, violent, and accidental means. Also that the benefits of the insurance should not extend to an injury of which there was no external and visible sign; nor to any injury happening, directly or indirectly, in consequence of disease; nor to any death or disability caused wholly or in part by bodily infirmities, or disease existing prior or subsequent to the date of the policy; nor to any case except where the injury was the proximate or sole cause of the disability or death. The issue between the parties may be briefly stated:

It is claimed by the plaintiff that, on the occasion mentioned by Dr. Hirschman, when the deceased was at Iron Mountain, he sustained an injury by jumping from a platform to the ground; that this injury was effected by such means as are mentioned in the policy; that the deceased at the time of the alleged accident was in sound physical condition and in robust health; and that the alleged injury was the proximate and sole cause of death. The defendant denies that the deceased sustained any injury that was effected through accidental means, and also contends that if any injury was sustained, it was one of which there was no external or visible sign, within the meaning of the policy; and that the supposed injury was not the cause of the death of the deceased, but that he died from natural causes. The case therefore resolves itself into three points of inquiry: *First.* Did Dr. Barry sustain internal injury by his jump from the platform on the occasion testified to by Dr. Hirschman? *Second.* If he did sustain injury as alleged, was it effected through external, violent, and accidental means, within the sense and meaning of the policy, and was it an injury of which there was an external and visible sign? *Third.* If he was injured as claimed, was that injury the proximate cause of his death? To entitle the plaintiff to a verdict, each and all of these questions must be answered by you in the affirmative; and if, under the testimony, either one of them must be negatively answered, then your verdict must be for the defendant.

The first question,—viz., was the deceased, Dr. Barry, injured by jumping from the platform,—is so entirely a question of fact to be determined upon the testimony, that the court must submit it without discussion to your determination. In passing upon the question, you will consider all the circumstances of the occurrence as laid before you in the testimony, the apparent previous physical condition of Dr. Barry, the subsequent occurrences and circumstances tending to show the change in his condition, the relation in time which the first developments of any trouble bore to the time when he jumped from the platform, the nature of his last sickness, and the symptoms disclosed in its progress and termination. Further, you will inquire what evidence, if any, did the *post mortem* examination, and any and all subsequent examinations of the parts alleged to have been the seat of the supposed injury, furnish of an actual physical injury; what connection, if any, does there or does there not appear to be between the

act of jumping from the platform and the subsequent events and circumstances which culminated in death, including the result, as you shall find it to be, of *post mortem* investigations.    The question is before you, in the light of all proven facts, for determination.    The court cannot indicate any opinion upon it without invading your exclusive province, and by your ascertainment of the facts the parties must be bound.    There is presented in the case a train of circumstances.    Do they, or not, so to speak, form a chain connecting the ultimate result with such a previous cause as is alleged?    Was the act of jumping from the platform adequate or inadequate to produce an internal injury?    Thus may you properly pursue the inquiry, guided by and keeping within the limits of the testimony.

If you find that injury was sustained, then the next question is, was it effected through external, violent, and accidental means?    This is a pivotal point in the case; and therefore vitally important.    *The means* must have been external, violent, and accidental.    Did an accident occur in the means through which the alleged bodily injury was effected?    It does not help you to a proper conclusion to say merely that the injury itself, if there was one, was an accident or accidental.    That was the result, and not the means, through which it was effected.    The jumping off the platform was the means by which the injury, if any was sustained, was caused.    Was there anything accidental, unforeseen, involuntary, unexpected in the act of jumping, from the time the deceased left the platform until he alighted on the ground?    The term accidental is here used in its ordinary, popular sense, and in that sense it means "happening by chance, unexpectedly; taking place not according to the usual course of things," or not as expected.    In other words, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, then, I suppose, it cannot be called a result effected by accidental means.    But if in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted from the accident, or through accidental means. We understand from the testimony, without question, that the deceased jumped from the platform with his eyes open, for his own convenience, in the free exercise of his choice, and not from any perilous necessity. He encountered no obstacle in jumping, and he alighted on the ground in an erect posture.    So far we proceed without difficulty.    But you must go further and inquire,— and here is the precise point on which the question turns,— was there or not any unexpected or unforeseen or involuntary movement of the body from the time Dr. Barry left the platform until he reached the ground, or in the act of alighting?    Did he or not alight on the ground just as he intended to do?    Did he accomplish just what he intended to, in the way he intended to?    Did he or not unexpectedly lose or relax his self-control in his downward movement?    Did his feet strike the ground as he intended or expected, or did they not?    Did he or not miscalculate the distance, and was

there or not any involuntary wrenching or turning of the body in the downward movement, or in the act of alighting on the ground? These are points directly pertinent to the inquiry in hand; and I instruct you that if Dr. Barry jumped from the platform and alighted on the ground in the way he intended to do, and nothing unforeseen, unexpected, or involuntary occurred, changing or affecting the downward movement of his body, as he expected or would naturally expect such a movement to be made, or causing him to strike the ground in any different way or position from that which he anticipated, or would naturally anticipate, then any resulting injury was not effected through any accidental means.     But if, in jumping or alighting on the ground, there occurred, from any cause, any unforeseen or involuntary movement, turn, strain, or wrenching of the body, which brought about the alleged injury; or if there occurred any unforeseen circumstance which interfered with or changed such a downward movement as he expected to make, or as it would be natural to expect under such circumstances, and as caused him to alight on the ground in a different position or way from that which he intended or expected, and injury thereby resulted,—then the injury would be attributable to accidental means.     Of course it is to be presumed that he expected to reach the ground safely and without injury.     Now, to simplify the question and apply to its consideration a common-sense rule, did anything, by chance, or not as expected, happen in the act of jumping or striking the ground, which caused an accident?     This, I think, is the test by which you should be governed in determining whether the alleged injury, if any was sustained, was or was not effected through accidental means.     You have the testimony in relation to the occurrence which it is claimed by the plaintiff produced in Dr. Barry a mortal injury, and taking it all into consideration, and applying to the facts the instructions of the court, you will determine whether, if any injury was sustained, it was effected through external, violent, and accidental means.

The defendant claims that if Dr. Barry did sustain injury, it was one of which there was no external and visible sign and therefore that the plaintiff is not entitled to recover.     In the discussion of this question, counsel were understood to contend that no recovery could be had under a policy in the form and terms of this one, if the injury was wholly internal.     In that view, the court cannot concur.     It is true, there must be an external and visible sign of the injury, but it does not necessarily follow from that that the injury must be external.     That is not the meaning or construction of this policy.     Such an interpretation of the contract as is contended for in that particular, would, in the opinion of the court, sacrifice substance to shadow and convert the contract itself into a snare, an instrument for the destruction of valuable rights.     Visible signs of injury, within the meaning of this policy, are not to be confined to broken limbs or bruises on the surface of the body.     There may be other external indications or evidences which are visible signs of internal injury.     Complaint of

pain is not a visible sign, because pain you cannot see; complaint of internal soreness is not such a sign, for that you cannot see; but if the internal injury produces, for example, a pale and sickly look in the face, if it causes vomiting and retching, or bloody or unnatural discharges from the bowels; if, in short, it sends forth, to the observation of the eye, in the struggle of nature, any signs of the injury,—then those are external and visible signs, provided they are the direct results of the injury. And with this understanding of the meaning of the policy, and upon the evidence, you will say whether, if Dr. Barry was injured as claimed, there were or were not external and visible signs of the injury; and the determination of this point will involve the consideration of the question, whether what are claimed here to have been external and visible signs were, in fact, produced by—were the result of—the injury, if any was sustained.

The next question is, if Dr. Barry was injured as claimed, was the injury the sole or proximate cause of his death? Interpreting and enforcing the policy according to its letter and spirit, it must be held that if any other cause than the alleged injury produced death there can be no recovery. In short, to entitle the plaintiff to recover, you must be satisfied that the alleged injury was the proximate cause of death. Whether a cause is proximate or remote does not depend alone upon the closeness in the order of time in which certain things occur. An efficient, adequate cause being found, must be deemed the true cause, unless some other cause, not incidental to it, but independent of it, is shown to have intervened between it and the result. If, for example, the deceased sustained injury to an internal organ, and that necessarily produced inflammation, and that produced a disordered condition of the injured part, whereby other organs of the body could not perform their natural and usual functions, and in consequence the injured person died, the death could be properly attributed to the original injury. In other words, if these results followed the injury as its necessary consequence, and would not have taken place had it not been for the injury, then I think the injury could be said to be the proximate or sole cause of death; but if an independent disease or disorder supervened upon the injury, if there was an injury,—I mean a disease or derangement of parts not necessarily produced by the injury,—or if the alleged injury merely brought into activity a then existing but dormant disorder or disease, and the death of the deceased resulted wholly or in part from such disease, then it could not be said that the injury was the sole or proximate cause of death.

It is claimed by the plaintiff that the supposed jar or shock said to have been produced by jumping from the platform, caused some displacement in the *duodenum;* that it became occluded; that there was constriction and occlusion of that intestine, which was accompanied with consequent inflammation. In short, that the deceased had *duodenitis* as the direct result of the alleged original injury, and, in con-

sequence, died. This contention is urged upon all the circumstances of the case, and upon the testimony offered by the plaintiff tending to show the symptoms which accompanied the last sickness, the diagnosis of the case made by attending physicians, and the alleged developments of the autopsy. It is contended in behalf of the defendant that there was no constriction, occlusion, or inflammation of the *duodenum,* that the deceased did not have *duodenitis,* and that no physical injury is shown to have resulted from jumping from the platform. This claim is based upon the contention that the various symptoms manifested in the last sicknesss of the deceased were consistent with natural causes,—with some undiscovered organic trouble, not occasioned by violence or sudden injury; that the conclusions of the physicians who made the *post mortem* examination were erroneous; and that the microscopic examination of the parts in New York demonstrated such alleged error. Concerning the microscopic test made in New York by Dr. Carpenter, the plaintiff contends that it is not reliable and should not be accepted for reasons urged in argument, and which I need not repeat.

Now, between these conflicting claims, weighing and giving due consideration to all the testimony, you must judge. If the deceased died of some disease or disorder not necessarily resulting from the original injury, if there was an injury, then the defendant is not liable under this policy; but if the deceased received an internal injury which, in direct course produced *duodenitis,* and thereby caused his death, then the injury was the proximate cause of death.

Since the plaintiff has alleged in his complaint and claims that the deceased received an injury in the *duodenum,* I am asked by the defendant's counsel to instruct you that if the deceased did not die of *duodenitis,* or if you should find that the alleged jump did not produce or result in a stricture of the *duodenum,* then your verdict should be for the defendant. This instruction I must decline to give, for my opinion is that if the deceased sustained internal injury in any part of his body, of which there was an external and visible sign, and if that injury was effected through the means named in the policy, and if such injury was the sole or proximate cause of death, then the plaintiff is entitled to recover.

As I once had occasion to observe in a case somewhat similar in general character to this, you ought not to adopt theories without proof, nor to substitute bare possibilities for positive evidence of facts testified to by credible witnesses. Mere possibilities, conjectures, or theories should not be allowed to take the place of evidence. Where the weight of credible testimony proves the existence of a fact, it should be accepted as a fact in the case. Where, if at all, proof is wanting, and the deficiency remains throughout the case, the allegation of fact should be deemed not established.

Now, to briefly sum up the case: If you find from the evidence that the deceased, on the twentieth day of June, 1883, sustained a

bodily injury, and that such injury was effected through external, violent, and accidental means, and was one of which there was an external and visible sign, and that the injury was the proximate or sole cause of death, then the plaintiff should have a verdict in her favor. If, on the contrary, you find either that the injury was not sustained, or that, if it was sustained, it was not effected through external, violent, and accidental means, or was an injury of which there was no external or visible sign, or that it was not the proximate or sole cause of death, then your verdict should be for the defendant.

NOTE.—The cases cited by counsel, and considered by the court on the trial of this case, were *Whitehouse* v. *Travelers' Ins. Co.* 7 Ins. Law J. 23; *Southard* v. *Railway Pass. Assur. Co.* 34 Conn. 574; *N. A. Life & Acc. Ins. Co.* v. *Burroughs,* 69 Pa. St. 43; and *McCarthy* v. *Travelers' Ins. Co.* 8 Ins. Law J. 208.