(43 App. Div. 365.)

## LARKIN v. INTERSTATE CASUALTY CO.

(Supreme Court, Appellate Division, Second Department.    October 3, 1899.)

INSURANCE—DEATH BY ACCIDENT—EVIDENCE.

To prove that the death of deceased was caused by a fall not induced by any disease or bodily infirmity, the insurer claiming the fall was caused by vertigo, it was shown he came home, and told a servant he had a dizzy headache, and would lie down; that later he was found dead on the floor, his head resting on the bar of the fender, and his body straight out; and that the floor was polished hard wood, and a rug was pushed away from his feet. There was some evidence that he was in general good health, and that he had never fallen from dizziness, and no actual proof that this fall was caused by dizziness. The family physician for 12 years had never attended him for vertigo or chronic disease of any kind. He saw blood about the nose of deceased, and he and three other physicians performed an autopsy. He found deceased healthy throughout, and could not state the cause of death. The second physician found a bruise above the large vertebræ at the base of the neck, with hemorrhage, and, in his opinion, death was caused by a fall and concussion of the brain and shock. A third physician corroborated this opinion. The son of deceased, also a physician, saw a depression in the muscles at the back of the neck, and a bruise under the collar button, which was dented on both sides and bent together. He saw blood on the fender. The fourth physician thought deceased died from natural causes, and not from accident, and said he found indications of Bright's disease sufficient to have caused death. Deceased's son testified he had made the usual tests several times, and found deceased did not have Bright's disease. *Held*, that a verdict that death resulted from "external, violent, and accidental means" was justified.

Appeal from trial term, Kings county.

Action by John Larkin, receiver, etc., against the Interstate Casualty Company. There was a judgment for plaintiff, and defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

William B. Hornblower, for appellant.

George C. Case, for respondent.

GOODRICH, P. J. The defendant insured one William H. Nafis "against bodily injuries sustained through external, violent, and accidental means, as follows: First, if death results from such injuries within ninety days therefrom, independently of all other causes, the company will pay," etc. Nafis died on October 9, 1896, and the manner and cause of his death give rise to this controversy. The plaintiff insists that it was occasioned by a fall, independently of any disease or bodily infirmity of Nafis, while the defendant contends that the deceased had vertigo, resulting in the fall which occasioned the death, and for which it is not liable in damages.

It is elementary, and the court charged, that the burden of proof was upon the plaintiff to establish that the death resulted from external, violent, and accidental means, and not from vertigo or bodily disease. Whitlatch v. Casualty Co., 149 N. Y. 45, 43 N. E. 405. But it does not follow that there must be direct and positive evidence on the subject. The simple question, in cases of this kind, as in this

case, is whether there was circumstantial or other evidence sufficient to justify a fair and reasonable inference that the death resulted from external, violent, and accidental means. Insurance Co. v. Barker, 35 C. C. A. 250, 93 Fed. 158. In Landon v. Insurance Co. (decided at the present term of this court) 60 N. Y. Supp. 188, there is a summary of cases of the same character, in which, although, as in the present case, there was no direct and positive evidence as to the cause of death, judgments in favor of the assured were affirmed. This decision renders unnecessary an examination of these authorities.

It becomes necessary, however, to analyze the evidence to ascertain whether there was sufficient to submit the issue to the jury. Nafis was a lawyer, living in Brooklyn. On the day of his death he ate a hearty breakfast, after which he left the house in company with his son, with whom he arranged for an afternoon drive. He visited a market, as was his usual custom, and then went to look at some apartment property. He returned to his home soon after 10 o'clock, telling a servant that he did not feel well; that he was dizzy, or had a dizzy headache, and was going to lie down and take a rest. He told the servant to bring him a cup of tea, and to assist him to take a gas stove into the room, both of which she did. This was the last time he was seen alive. Mrs. Nafis left the house subsequently to her husband's departure, and returned about 12 o'clock, when she found him lying dead on the floor. His head was resting on the bar of the fender, and his body straight out towards the alcove at the other side of the room. There was a rug on the floor, pushed away from his feet. The floor was polished hard wood, uncarpeted, and had been wiped with a damp cloth just before Nafis went into the room. There was a pillow on the lounge, and on the other end of the latter, or lying on the floor by it, a rubber bag of warm water. There was evidence tending to show that the deceased was in a state of general good health. There was no direct proof that his fall was caused by vertigo. The fact that the floor was of polished hard wood, and that a rug was displaced at his feet, although slight evidence, is sufficient, in the absence of any contradiction, to justify the conclusion that the fall was occasioned either by his slipping on the floor or by the slipping of the rug as he stepped upon it. It seems to me that this evidence is as strong as was the evidence in the cases already cited, where the appellate courts sustained judgments for the plaintiffs. If there had been any evidence that Nafis had ever fallen from dizziness or vertigo, there would have been plausibility in the contention that the plaintiff must positively negative the inference that Nafis fell on this occasion from a similar cause; but, on the contrary, there is evidence, though slight, that he had never fallen from such a cause.

This brings us to a consideration of the expert medical testimony. Dr. Edson, who had been the family physician for 12 or 15 years, testified that he had never attended the deceased for vertigo or chronic disease of any kind. He saw the body shortly after it was found, and saw blood about the nose. Afterwards, he and Dr. Van Cott, another physician on the part of the family, and two physicians, Drs. Thatcher and Clarkson, on the part of the defendant, performed an

autopsy.    Dr. Edson says that the deceased was "essentially healthy throughout," but that he could not state the cause of his death.   Dr. Van Cott found a bruise on the neck, above the large vertebræ at the base of the neck, with sedulation or hemorrhage, and, in answer to hypothetical questions which fairly set out the conditions shown by the evidence, testified that death might have been, and in his opinion was, caused by a fall and concussion of the brain and shock. This opinion was corroborated by another medical witness.   Dr. Nafis, son of the deceased, testified to seeing a depression in the muscles at the back of the neck, and a dark bruise lower down, under the collar button, which was dented on both sides and bent together. He also saw blood on the fender.   The defendant's expert, Dr. Thatcher, who assisted at the autopsy, testified that he found no evidence of death by violence or external cause, saying: "My conclusion was that it was impossible to state positively, but that, in my opinion, it was altogether probable, that he died from natural causes," and, in his opinion, not from external violence or accidental causes.   He also very fairly stated that he did not know the cause of the death, but that he found indications of disease of the kidneys sufficient to have caused the death, and that the deceased had nephritis, commonly known as "Bright's disease."   He also said that generally an examination of the urine would disclose Bright's disease, if it existed. Drs. Biggs and Delatour, called by the defendant as experts, stated that the medical report of the autopsy which was handed to them did not contain sufficient information to indicate that the death resulted from accidental, violent, or external means.   On the rebuttal, the son of the deceased, Dr. Nafis, testified that he had made several examinations of his father's urine by the usual tests, and found it that of a man perfectly healthy in that respect.   This evidence was uncontradicted, and sufficient to justify the jury in believing that the deceased did not have Bright's disease, and it effectually disposed of the defendant's contention that the deceased had vertigo from that cause, and that his death resulted therefrom.

We are thus brought again to the question whether, even without disregarding the expert medical testimony of both parties as to the presence of Bright's disease, there was evidence sufficient to justify a fair and reasonable inference that the death resulted from external, violent, and accidental means, and not from vertigo, and we are clearly of opinion that the question was properly submitted to the jury, and that the verdict was justifiable on the evidence.   There are no exceptions in the record to which it is necessary to refer, other than those involved in the foregoing discussion, and the judgment should be affirmed.

Judgment and order affirmed, with costs.   All concur.