In the case of Bigelow v. Garwitz (Sup.) 15 N. Y. Supp. 940, the amount claimed and liquidated was $224.80, and the jury rendered a verdict for $100. The court said:

"The jury rendered a verdict in favor of the plaintiff for $100. It was properly set aside. It was in direct contravention of the instructions of the court, and was manifestly the result of a compromise. It was a verdict which the jury had no right to render, and which the court might well have set aside on its own motion."

To the same effect is the case of Powers v. Gouraud, 19 Misc. Rep. 268, 44 N. Y. Supp. 249.

Upon principle, and upon authority as well, we think the judgment and order appealed from should be reversed, and a new trial granted.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide event, upon questions of law only, the facts having been examined, and no error found therein. All concur.

---

(86 App. Div. 83.)

### APPEL v. ÆTNA LIFE INS. CO.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1903.)

1. DIRECTING VERDICT—REQUEST BY BOTH PARTIES—REVIEW ON APPEAL.

    Where both parties requested the directing of a verdict, and the party whose request was denied did not ask to go to the jury on any question of fact, the evidence will, on appeal, be construed most favorably to the party for whom the verdict was directed.

2. ACCIDENT INSURANCE—CAUSE OF DEATH—LIABILITY OF INSURER.

    Under a policy providing that, if the insured's death result solely from bodily injuries effected through external, violent, and accidental means, a certain sum shall be paid; that, if such death result from such an accident while riding a bicycle, double that sum shall be paid; but that if death result from other causes the insurer shall not be liable—the insurer does not become liable on the death of the insured from septic peritonitis resulting from an inflammation of the appendix, caused by the regular movement of the "psoas" muscle while the insured was riding his bicycle.

Action by Amelia M. Appel, as administratrix of Joseph M. Appel, deceased, against the Ætna Life Insurance Company. Verdict for plaintiff, and defendant moves for a new trial. Ordered to be heard by the Appellate Division in the first instance. Motion granted.

The action was commenced on the 29th day of March, 1902, to recover the amount of a twentieth century combination accident policy issued by the defendant to the plaintiff's intestate. At the close of the plaintiff's evidence the defendant made a motion for a nonsuit, which was denied, and an exception was duly taken. The defendant then moved for the direction of a verdict in its favor, which was also denied, and defendant excepted. The plaintiff then moved for the direction of a verdict in her favor, which was granted, and an exception to such direction was taken by the defendant. The defendant then made a motion for a new trial, and the court directed that such motion be heard, on a case containing exceptions, at the Appellate Division in the first instance.

Argued before ADAMS, P. J., and McLENNAN, WILLIAMS, and HISCOCK, JJ.

Charles Van Voorhis, for plaintiff.
Joseph Taylor, for defendant.

McLENNAN, J.   The facts are not in dispute, and both parties having moved for the direction of a verdict, and the defendant not having asked to go to the jury upon any question of fact, the plaintiff is entitled to have the evidence construed most favorably to her, and to any inference which may be legitimately drawn therefrom which tends to support the verdict in her favor.

In Thompson v. Simpson, 128 N. Y. 270, 28 N. E. 627, the head-note, we think, states the correct rule as follows:

"The effect of a request by both parties upon the trial of an action for the direction of a verdict in his favor is to clothe the court with the functions of a jury.   If the party whose request is denied does not thereupon request to go to the jury on the facts, a verdict directed for the other party stands as would the finding of a jury for the same party, in the absence of any direction; and the review, upon appeal to this court, is governed by the same rule as applies in cases of verdicts rendered without direction. All controverted and inferable facts will be deemed conclusively established in favor of the party for whom the verdict was directed."

To the 'same effect, see Adams v. Roscoe Lumber Co., 159 N. Y. 176, 53 N. E. 805; Smith v. Weston, 159 N. Y. 194, 59 N. E. 38; Westervelt v. Phelps, 171 N. Y. 212, 63 N. E. 962.

The facts, stated most favorably to the plaintiff, are:   On or about the 11th day of January, 1901, the defendant duly issued its policy of insurance, in consideration of the warranties contained in the application therefor, and of the sum of $25 paid to it as premium, by which it insured Joseph M. Appel, the plaintiff's intestate, for a period of one year, against the result of accident.   The policy provided, in substance and in terms, so far as it is important to note, that if death resulted solely from bodily injuries effected through external, violent, and accidental means, which, independent of all other causes, resulted in the death of the insured, his representatives (the plaintiff in this action) would be entitled to receive the sum of $5,000; and that, if such death resulted from such an accident while riding a bicycle, the plaintiff would be entitled to receive double that sum; and that, in case death resulted from other causes, defendant would not be liable.

As appears by the uncontradicted evidence, the insured, who was an experienced bicycle rider, started from his home in the city of Rochester at about 3:30 o'clock on the afternoon of August 26, 1901, being then apparently in his usual health, to take a ride on his bicycle.   He continued to ride, going over some "rather rough" road, until 5 o'clock, when he reached his brother's store, where he was employed.   His clothing was dusty, and "he was puffing or breathing hard, as any one would be if he had been on a bicycle ride."   The deceased then washed himself and entered 'upon the performance of his duty in the store, continuing until half past 7 o'clock, when he went home on his wheel, arriving there at about a quarter of 8, and had his supper.   Soon after he complained of soreness in his abdomen, went to bed at 10 o'clock, and about 2 o'clock in the morning commenced to suffer great pain in the region of the abdomen.   His wife applied or gave him certain remedies to relieve the same, which apparently had that result.   He got up the next morning at about 6 o'clock, the usual hour, when he was again taken with severe pain.

A physician was called, who found it necessary to administer a hypodermic in order to get him into bed. At midnight following he was taken with vomiting, had a severe chill, and the physician was again sent for. The physician found the intestate suffering very severely from pain in the abdomen, and discovered a marked tenderness over the appendix. He diagnosed the trouble as appendicitis, and advised an operation. Another physician was called in consultation, who concurred in the diagnosis, and the intestate was removed to a hospital, and on the afternoon of August 28th an operation for appendicitis was performed. The insured died on August 31st, three days later. The operation disclosed that there had been a rupture of the appendix at its base, and the immediate cause of death was septic peritonitis, caused by extravasation of the contents of the appendix into the abdominal cavity. In performing the operation, it was discovered that there were hard substances in the appendix about the size of a bean, called "coprolites or concretions," which it would take months to form, and which constituted an unnatural condition of the organ, and one which might possibly at some time have resulted in appendicitis, independent of any other cause, but which might not have caused any serious consequences.

The evidence of the plaintiff tends to prove—and we will assume it to be a fact—that the appendicitis which resulted in the death of the insured was caused by the bicycle ride which he took on the afternoon of August 26th. The physicians called as witnesses on behalf of the plaintiff testified that in their opinion this was true, because the "psoas" muscle, the function of which is to flex the leg upon the body and rotate the leg and thigh upward, lies in close proximity to the appendix, and in such position that when brought into play, as by riding a bicycle, it necessarily rubs against the appendix, and, there being "coprolites or concretions" (hard substances about the size of a bean) in such organ, such rubbing or play of the muscle caused irritation resulting in inflammation, which weakened the walls of the appendix, caused it to rupture, thus permitting the contents of that organ to enter the abdominal cavity, causing appendicitis, septic peritonitis, and death.

We can conceive of no theory upon which it can be said, from the facts disclosed by the evidence, that the death of the insured resulted from "bodily injuries, effected  *  *  *  through external, violent, and accidental means," within the meaning of the policy. Riding the bicycle was in no sense an accident or accidental; the insured planned for and deliberately entered upon the project, and, so far as appears, it was carried out precisely as intended. He sustained no fall or shock, came into collision with nothing, he went where he chose, selected his route, his wheel at all times under perfect control, and he brought into play such muscles of the body, and only such, as he willed. The result of such ride, while extraordinary, in no manner proves that it was accidental. If the deceased had had a weak heart, and had deliberately and in the usual way walked rapidly up a hill, which caused the heart action to stop, could it be said that death was the result of accident? It might have been unwise to undertake to reach the top of the hill on foot, and of course the re-

sult was not anticipated, but there was no accident about it. The most that can be said in such cases, and in the case at bar, is that the result was accidental, but the means which produced it were not accidental. As we have seen, the evidence wholly fails to show that the deceased did anything which he did not fully intend to do, or that what he did was not done precisely as intended; therefore the result of such acts—his death—was not produced by "accidental means."

This view of the matter is fully sustained by the authorities cited by defendant's counsel: Southard v. Ins. Co., 34 Conn. 574, Fed. Cas. No. 13,182; McCarthy v. Travelers' Ins. Co., 8 Biss. 360, Fed. Cas. No. 8,682; Ætna Life Ins. Co. v. Dorsey, 48 Ohio Law Bul. 303; Feder v. Iowa State Travelers' Ins. Co., 107 Iowa, 538, 78 N. W. 252, 43 L. R. A. 693, 70 Am. St. Rep. 212.

The cases cited by the learned counsel for the plaintiff are not in conflict with the principle for which the defendant contends. In Paul v. Travelers' Ins. Co., 45 Hun, 313, affirmed 112 N. Y. 472, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. Rep. 758, the insured accidentally inhaled illuminating gas, and death resulted. In Tucker v. Insurance Co., 50 Hun, 50, 4 N. Y. Supp. 505, the insured went with others to a disabled steamer on Lake Ontario, to aid in rescuing the crew. While returning from the wreck the boat was accidentally capsized by a heavy sea, and the insured was drowned. When his body was found some 10 days later, a bruise was discovered across his left temple, and under those circumstances it was properly held that it was for the jury to say whether death resulted from "bodily injuries * * * through external, violent, and accidental means." In fact, the evidence in that case was such as to almost conclusively establish the fact. In Larkin v. Interstate Casualty Co., 43 App. Div. 365, 60 N. Y. Supp. 205, the only question of fact raised by the evidence was whether the death of the insured resulted from a fall caused by slipping upon the floor and striking his head against the fender of a stove, or whether such fall was caused by an attack of vertigo. The court held that the evidence was of such a character as to require that question to be submitted to the jury. In Martin v. Equitable Accident Association, 61 Hun, 467, 16 N. Y. Supp. 279, concededly the insured cut his finger accidentally. He died many days later from blood poisoning, and upon all the evidence in that case the court held that it was a question for the jury to determine whether or not the accident was the cause of death. In Bailey v. Interstate Casualty Co., 8 App. Div. 127, 40 N. Y. Supp. 513, the insured, a physician who was in a weakened condition by reason of injuries which he had sustained, was riding in a carriage. He stopped, and attempted to administer medicine to himself in his leg with a hypodermic needle. While thus engaged, the carriage suddenly started, and by reason of such sudden start he accidentally inserted the needle too deep, and the injury for which he sought to recover weekly indemnity ensued. The court held that it was a question for the jury as to whether or not the injury complained of was caused by accidental means.

The foregoing illustrates the principle decided by the many other cases which are cited by plaintiff's counsel. In each of those cases the facts established that the thing or acts which caused the injury or death were accidental—were not intended—or the evidence was of such a character as to make that question one of fact. Our attention has not been called to any case which holds, and we have failed to discover any authority for the proposition, that a result which is produced by means all of which, and every detail of which, was intended, can be said to have been produced by accidental means, simply because the result which followed the employment of such means, exactly in the manner intended, was different from the result anticipated. In order that the plaintiff may succeed in the case at bar, it is necessary that we should assent to that exact proposition. We think that is not the proper construction or true meaning of the language of the policy in suit.

Having reached the conclusion indicated, which goes to the merits of the plaintiff's alleged cause of action, we deem it unnecessary to consider any of the other questions presented by the appeal.

Defendant's exceptions sustained, and motion for a new trial granted, with costs to the defendant to abide the event. All concur.