[S. F. No. 6818. In Bank.—April 5, 1916.]

## MARY ROSE ROCK, Respondent, v. TRAVELERS' INSURANCE COMPANY OF HARTFORD, CONNECTICUT (a Corporation), Appellant.

ACCIDENT INSURANCE—BURDEN OF PROOF.—In an action upon an accident insurance policy, the burden of proving that the death of the insured was the result of "bodily injury effected through external, violent and accidental means," is upon the plaintiff.

ID.—DEFINITION OF ACCIDENT.—An accident means a casualty—something out of the usual course of events and which happens suddenly and unexpectedly, and without any design of the person injured.

ID.—INJURY EFFECTED THROUGH "ACCIDENTAL MEANS."—Under a policy insuring against death or injuries effected by "accidental means," it is not enough that death or injury should be unexpected or unforeseen, but there must be some element of unexpectedness in the preceding act or occurrence which leads to the death or injury.

ID.—DEATH RESULT OF UNDUE EXERTION—CARRYING HEAVY BODY DOWN FLIGHT OF STAIRS.—The death of the insured is not effected through accidental means where it results from an exertion put forth by him in carrying a heavy casket down a flight of stairs, during which process he neither slipped nor stumbled nor did the casket fall on him, the entire operation being carried out in precisely the manner intended and designed by him.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Coogan & O'Connor, for Appellant.

Lewis F. Byington, for Respondent.

THE COURT.—This case was originally assigned to Department One of this court and the judgment of the lower court was reversed. Upon petition for a rehearing we granted petitioner's prayer, because we believed that the importance of the matters involved in the appeal merited a consideration by the court in Bank. After a careful study of the case, in which we have been assisted by the able arguments and briefs of counsel on both sides, we have adopted

the opinion of Department One, prepared by Mr. Justice Sloss, which is as follows:

The plaintiff, as beneficiary under a policy of accident insurance, issued by the defendant to Joseph Francis Rock, brought this action to recover seven thousand dollars payable to her under the terms of said policy in the event of the death of said insured "resulting from bodily injuries effected directly and independently of all other causes, through external, violent, and accidental means." The complaint alleged, and the answer denied, that Joseph Francis Rock had sustained bodily injuries and met his death within the above-quoted terms of the policy.

The action was tried before a jury, which returned a verdict in favor of the plaintiff for the amount claimed. The defendant appeals from the judgment, and from an order denying its motion for a new trial.

The principal question, and the only one that need here be considered, is whether the evidence justified the finding (implied in the verdict of the jury) that the deceased died as the result of bodily injuries effected through external, violent, and accidental means.

On June 30, 1911, Joseph Francis Rock was attending the funeral of one James Murphy. The casket containing Murphy's remains was on the second floor of the Murphy home. The stairway leading from the second to the first floor was so narrow that only two men could handle the casket while on the stairs. Rock took up one end of the casket and M. C. Cleveland the other. These two then carried the casket down the stairs, Cleveland leading and Rock holding the upper or rear end. When they got to the bottom of the stairs other pallbearers took hold, and immediately thereafter Rock collapsed. He was promptly removed to a hospital, but died before medical aid could reach him. The cause of his death, as shown by the testimony, was acute dilatation of the heart. An autopsy was held. There was some conflict of testimony regarding the exact condition of Rock's heart, as disclosed by this *post-mortem* examination. There can be no reasonable room for doubt, however, that the condition of the heart had not been entirely normal. Indeed, the circumstances above related, together with some other matters to which we shall refer, make it perfectly clear that Rock's heart was not

able to withstand the strain put upon it by the exertion which he underwent, and that the strain thus caused produced the dilatation and the consequent death.

The record does not disclose that anything of an unusual or unexpected nature occurred in the course of carrying the casket down the stairs. The testimony, so far as it went, was to the contrary. Cleveland, who was carrying the forward end of the coffin, was walking backward and facing Rock. He testified that "coming down the stairs nothing to my knowledge happened in the way of slipping, or anything of that sort. . . . I don't know of anything of an exceptional character that happened as I went down the stairs; just walked down the stairs." Three other witnesses gave similar testimony, and there is nothing conflicting with this view. The respondent points to the testimony of McGinn, the undertaker in charge of the funeral, as supporting the view that in some accidental way Rock was forced into an unnatural position. But McGinn testified merely that Rock "was in a stooping position, kind of stooping over; bent over. I told him to straighten himself up and that would push the casket back to him so as to ease it up for him, which he did; and then he fell back into that position again as he got about halfway coming downstairs; that is, got into that bent-over position." There is nothing in this to indicate that the stooping position was anything more than the natural and ordinary effect of carrying a heavy object down a flight of stairs. Apparently Rock attempted to assume another position on the suggestion of McGinn, but soon resumed his original attitude. McGinn's expression that "he *fell back* into that position" cannot, in view of all the facts in evidence, be taken to mean anything more than this. The witness himself explained and qualified this expression by adding, "that is, Rock got into that bent-over position."

The burden of proving that the death of the insured was the result of "bodily injury effected through external, violent, and accidental means" was upon the plaintiff. (1 Cyc. 289; *Price* v. *Occidental Life Ins. Co.*, 169 Cal. 800; [147 Pac. 1175].) In the case at bar the court so instructed the jury. The appellant's attack upon the verdict rests upon the contention that the injury here claimed to have been sustained by Rock was not shown to have been

effected through "accidental" means. The meaning of the term "accident" has frequently been discussed by the courts, and we have had occasion to define it in several of our own decisions. In *Richards* v. *Travelers Ins. Co.*, 89 Cal. 170, [23 Am. St. Rep. 455, 26 Pac. 762] accident was defined as "a casualty—something out of the usual course of events and which happens suddenly and unexpectedly and without any design of the person injured." (See, also, *Price* v. *Occidental Ins. Co.*, 169 Cal. 800, [147 Pac. 1175]; *Western Indemnity Co.* v. *Pillsbury*, 170 Cal. 686, [151 Pac. 398].) The policy, it will be observed, does not insure against accidental death or injuries, but against injuries effected by accidental means. A differentiation is made, therefore, between the result to the insured and the means which is the operative cause in producing this result. It is not enough that death or injury should be unexpected or unforeseen, but there must be some element of unexpectedness in the preceding act or occurrence which leads to the injury or death. Policies like the one before us have been before the courts in many cases, and the great weight of authority, we think, sustains the view which we have just expressed. Thus in *Clidero* v. *Scottish Accident Ins. Co.*, 29 Scot. L. R. 303, Lord Adam said: "The question, in the sense of this policy, is not whether death was the result of accident in the sense that it was a death which was not foreseen or anticipated. That is not the question. The question is, in the words of this policy, whether the means by which the injury was caused were accidental means. The death being accidental in the sense in which I have mentioned, and the means which led to the death as accidental, are to my mind, two quite different things. A person may do certain acts, the result of which acts may produce unforeseen consequences and may produce what is commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental." (*In re Scarr*, L. R. 1 K. B. Div. [1905] 387; *Feder* v. *Iowa State etc. Assn.*, 107 Iowa, 538, [70 Am. St. Rep. 212, 43 L. R. A. 693, 78 N. W. 252]; *Southard* v. *Railway etc. Co.*, 34 Conn. 574, [Fed. Cas. No. 13,182]; *Smouse* v. *Iowa State etc. Assn.*, 118 Iowa, 436, [92 N. W. 53]; *Lehman* v. *Great Western Acci-*

*dent Assn.*, 155 Iowa, 737, [42 L. R. A. (N. S.) 562, 133 N. W. 752]; *Appel* v. *Aetna Life Ins. Co.*, 86 App. Div. 83, [83 N. Y. Supp. 238]; *Niskern* v. *United Brotherhood etc.*, 93 App. Div. 364, [87 N. Y. Supp. 640]; *Schmid* v. *Indiana etc. Assn.*, 42 Ind. App. 483, [85 N. E. 1032]; *Bryant* v. *Cont. Gas Co.*, [Tex. Civ. App.] 145 S. W. 636; *Cobb* v. *Pref. Assns.*, 96 Ga. 818, [22 S. E. 976]; *Fidelity & Cas. Co.* v. *Stacey's Exrs.*, 143 Fed. 271, [6 Ann. Cas. 955, 5 L. R. A. (N. S.) 657, 74 C. C. A. 409]; *Shanberg* v. *Fidelity & C. Co.*, 143 Fed. 651, S. C., on appeal, 158 Fed. 1; [19 L. R. A. (N. S.) 1206, 85 C. C. A. 343]; *Hastings* v. *Travelers' Ins. Co.*, 190 Fed. 258.)

The same doctrine is recognized in *United States Mutual Accident Association* v. *Barry*, 131 U. S. 100, [33 L. Ed. 60, 9 Sup. Ct. Rep. 755]. In that case, the supreme court upheld the propriety of an instruction to the jury "that if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means, but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means."

We shall not take the time to review in detail the facts of the cases which we have cited. It will suffice to say, by way of illustration, that among them are decisions holding that death was not the result of bodily injury sustained through accidental means where an insured who was afflicted with tuberculosis died from a hemorrhage occasioned by a ruptured artery, the rupture of the artery being due to the act of the insured in standing on a chair and reaching out to close the shutter of a window (*Feder* v. *Iowa State etc. Assn.*, 107 Iowa, 538, [70 Am. St. Rep. 212, 43 L. R. A. 693, 78 N. W. 252]), or where the insured, convalescing from an attack of pneumonia, arose, and in attempting to remove his nightshirt made a more or less violent effort, which caused the rupture of a blood vessel resulting in his death (*Smouse* v. *Iowa State etc. Assn., supra*), or where the insured died of appendicitis, caused, as the evidence tended to show, by his riding a bicycle over a rough road (*Appel* v. *Aetna Life Ins. Co.*, 86 App. Div. 83, [83 N. Y. Supp. 238], or where the insured went to Colorado Springs and ascended the stairs of a hotel, carrying in each hand a traveling bag, his death resulting from paralysis

of the heart caused by the high altitude and the strain of his exertions. (*Schmid* v. *Indiana etc. Assn.*, 42 Ind. App. 483, [85 N. E. 1032].)

There are decisions which declare a different rule. (*Horsfall* v. *Pacific Mutual L. Ins. Co.*, 32 Wash. 132, 98 Am. St. Rep. 846, 63 L. R. A. 425, 72 Pac. 1028]; *Young* v. *Railway Mail Assn.*, 126 Mo. App. 325, [103 S. W. 557]; *Beile* v. *Travelers Protective Assn.*, 155 Mo. App. 629, [135 S. W. 497].) In the first two of these cases the death of the insured occurred through the strain of some exertion voluntarily undertaken by him, there being, so far as the evidence showed, nothing unexpected or out of the ordinary in the manner of performing the act which led to the fatal result. In the Beile case, death was the result of chloroform administered to the insured, with his consent, in preparation for a surgical operation. The evidence did not disclose that there was anything unusual or unexpected in the circumstances, except for the fact that death resulted. In each case it was held that a judgment in favor of the beneficiary should be sustained. Of these cases, *Young* v. *Railway Mail Assn.*, 126 Mo. App. 325, [103 S. W. 557] is the one in which the question was most exhaustively considered. The theory of the court appears to have been that a death or injury by accidental means is shown where the death or injury is unforeseen or unexpected, even though there be nothing of an unusual or unexpected character in the act leading to the result. "Any unusual and unexpected event attending the performance of a usual and necessary act" is said to be covered by such a policy as the one before us. We are unable to agree with this view. To our minds it fails to give effect to the plain language of the policy in that it does not distinguish between the result to the insured and the means by which that result was brought about. As we have already pointed out, the insurance is not against accidental injury or death, but is against death resulting from injuries effected by accidental means. In nearly all, if not all, of the other cases relied on by the respondent, there was some evidence which justified the inference that the means through which the injury was sustained contained something of an unexpected or unforeseen character. In *United States Mutual Accident Assn.* v. *Barry*, 131 U. S. 100, [33 L. Ed. 60, 9 Sup. Ct. Rep. 755], relied on by both parties to this appeal,

the supreme court of the United States took this view of the facts.

It may also be said that the interpretation which we have given to this policy was adopted by the court below in its instructions to the jury. Under the facts as above recited, we find ourselves unable to escape the conclusion that the verdict was in conflict with these instructions. Briefly stated, the case is simply this: Rock undertook to carry a heavy casket down a flight of stairs. In carrying it down he did not slip or stumble nor did the casket fall against him. The entire operation was carried out in precisely the manner intended and designed by Rock. The exertion which he thus assumed was, however, beyond his strength and imposed upon his vital organs a burden which, as it turned out, they could not bear. The result of this exertion was a dilatation of the heart and death. On these facts, which appear in the record without substantial conflict, it cannot be said that the plaintiff sustained the burden which was on her of proving that the death of the insured was caused by bodily injuries effected through accidental means.

The judgment and the order denying a new trial are reversed.