### ÆTNA LIFE INS. CO. v. BRAND.*

(Circuit Court of Appeals, Second Circuit. February 25, 1920.)

No. 146.

Insurance ☞455—Accident in surgical operation held injury through "external, violent, and accidental" means.

Where a surgeon, in closing the incision after an operation on insured for hernia, punctured the deep epigastric artery with his needle, owing to the fact that such artery was not where it should be in normal persons, and as a result a blood clot formed on the artery which passed into the artery supplying a leg, the leg became gangrened and was amputated, the injury *held* to have been "effected solely through external, violent, and accidental means," within the terms of the policy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, External, Violent, and Accidental Means.]

In Error to the District Court of the United States for the Northern District of New York.

Action by Walter N. Brand against the Ætna Life Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Ætna Company issued to Brand a policy of "accident insurance," insuring him "against loss resulting directly and independently of any and all other causes from bodily injury effected solely through external, violent, and accidental means." But it was also provided: "This policy does not extend to

nor cover any accidental bodily injury caused or contributed to, directly or indirectly, by sickness or disease."

While insured, Brand had a hernia, and his physician prescribed "a truss and an operation." He voluntarily submitted to the operation, by a surgeon whose skill is not impugned on this record. While sewing up the incision usually made in such cases, the surgeon's needle pricked the "deep epigastric artery." This artery is not exposed to view in such an operation as that on Brand; the surgeon used his needle in the usual way, and put it exactly where he intended to put it; but Brand's epigastric artery was not where such arteries are in the usual or normal man, therefore his artery was touched.

The puncture was closed, the operation for hernia concluded, and testified to as having been successful. Some time after operation, however, one of Brand's legs became gangrened, and he suffered amputation. By testimony acceptable to the jury, the reason for the gangrene was that the surgeon's needle caused a blood clot in the epigastric artery; that clot passed on and into the artery supplying the leg, and nature failed to dissolve or absorb it, wherefore the leg below the arrested clot received no nourishment and gangrene ensued.

This action was brought on the policy, plaintiff claiming that the loss of his leg was due to the puncture of the artery by the surgeon's needle, and that such needle, or the needle as used by the surgeon, constituted the "external, violent, and accidental means" of his loss, which was not "caused or contributed to * * * by sickness or disease."

At trial the court charged, in substance, that if the gangrene of plaintiff's leg, and the consequent necessary loss of it, was caused solely by the pricking of the artery and ensuing blood clot, the leg was lost by external, violent, and accidental means. The court further held that there was no evidence that Brand's hernia was "caused or produced by any sickness, or accompanied by any sickness." Plaintiff had a verdict, and defendant took this writ.

Stewart F. Hancock, of Syracuse, N. Y., for plaintiff in error.

David F. Costello, of Syracuse, N. Y., for defendant in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Plaintiff in error complains that the remark of the trial judge last above quoted gave the jury the impression that hernia is not a disease. No such inference can be drawn; it was certainly true that no evidence had been given showing that Brand's hernia made him "sick," and we find no injurious error in the implication suggested. This is because, if we assume that hernia is or may be a disease (again something as to which no satisfactory evidence was given) Brand's hernia was not a cause which produced or contributed to the pricking of his artery, but a condition which exposed him to that possibility. Considering this record, there is no evidence from which any jury could have found as a fact that Brand's hernia caused the pricking of his artery. Such a verdict would have been as far-fetched as to find that, had the ceiling fallen while he lay strapped to the operating table, the hernia that brought him to the table caused or contributed to the injury produced by the falling plaster.

We have no doubt that the bodily injury was effected solely by violent and external means. That the degree of violence is immaterial is fundamental, and even an expected and usual force may be violent enough to injure. Shanberg v. Fidelity, etc., Co., 158 Fed. 5, 85 C. C. A. 343, 19 L. R. A. (N. S.) 1206, and see Western, etc., Co. v.

Smith, 85 Fed. 401, 29 C. C. A. 223, 40 L. R. A. 653, where the only violence was that of a new and stiff shoe. The point in this case is whether, on the evidence as established by the verdict, Brand's leg was lost by accidental means, and since the jury has established the causal connection between the pricked artery and the lost leg, the question becomes this: Was the surgeon's puncture accidental?

Every suggested, and we think every conceivable, objection to answering this question in the affirmative, is summed up in the perfectly true statement that the surgeon put his needle just where it ought to have gone, and injury resulted solely because the artery was where it ought not to have been. At least one element of this statement is immaterial, for it plainly makes no difference that the impact or force preceding the injury is designed by the person injured. Lewis v. Ocean, etc., Co., 224 N. Y. 18, 120 N. E. 56; Lewis v. Iowa, etc., Ass'n, 248 Fed. 602—litigations which arose out of the same occurrence. It may be assumed that the injurious result is never designed or intended, but it has frequently been held that, if such result is the natural or reasonably to be expected consequence of conditions voluntarily assumed, the result may be an accident, but the producing means cannot be called accidental. This ruling probably justifies decisions such as Appel v. Ætna, etc., Co., 180 N. Y. 514, 72 N. E. 1139, affirming 86 App. Div. 83, 83 N. Y. Supp. 238; Feder v. Iowa, etc., Ass'n, 107 Iowa, 538, 78 N. W. 252, 43 L. R. A. 693, 70 Am. St. Rep. 212; Hastings v. Travelers', etc., Co. (C. C.) 190 Fed. 259; and Fidelity, etc., Co. v. Stacey's Executors, 143 Fed. 271, 74 C. C. A. 409, 5 L. R. A. (N. S.) 657, 6 Ann. Cas. 955. It has, however, also been held that, where the injurious result is caused by an act voluntarily performed by the party injured, the means cannot be called accidental. This ruling was applied in the case of one whose body was abnormal in Smith v. Travelers', etc., Co., 219 Mass. 147, 106 N. E. 607, L. R. A. 1915B, 872, a case more closely resembling in its facts the litigation at bar than any other called to our attention or known to us. It is plainly true, and all the cases agree, that in construing this clause, so long found in accident insurance policies, it is the cause and not the consequence that must be regarded in fixing liability; but we are unable to perceive any reason why one causal element may not be found in the peculiarities, unknown to the sufferer, of his own body.

It is to be remembered that the policy contains no exception against men with misplaced arteries or other corporeal peculiarities, and the crucial question is not changed by Brand's singular configuration; the inquiry still is: What is meant by the word "accidental," and will its definition cover this incident? For this court the word is authoritively defined in Mutual, etc., Ass'n v. Barry, 131 U. S. at 121, 9 Sup. Ct. 755, 33 L. Ed. 60, it has received elaborate consideration from Sanborn, J., in Western, etc., Ass'n v. Smith, supra, and that the word must be taken in the usage of the average man and not of the scientist has recently been enforced by Cardozo, J., in Lewis v. Ocean, etc., Co., 224 N. Y. at 20, 120 N. E. 56. For this case the important words of the authoritative definition of "accidental" are that—

"If in the act which precedes the injury something unforeseen, unexpected, unusual occurs, which produces the injury, then the injury has resulted through accidental means."

The thing that was unexpected and unusual in this instance was the perhaps congenital misplacement of an artery. We think that this element of the act of sewing up the surgeon's cut was, within the definition, as truly accidental as would have been the case had the surgeon's needle broken.

We conclude that on reason we cannot follow the authority of Smith v. Travelers', etc., Co., supra, and that this case is governed by Mutual, etc., Co. v. Barry, supra.

Judgment affirmed, with costs.