### GLAESER v. PRUDENTIAL INS. CO. OF AMERICA.

#### No. 23217–S.

District Court, N. D. California, S. D.

Sept. 25, 1944.

---

[7] 28 U.S.C.A. § 46.

[8] See United States v. Atlanta, Birmingham & Coast R. Co., 282 U.S. 522, 51 S. Ct. 237, 75 L.Ed. 513.

Harry G. Henderson, of San Francisco, Cal., for plaintiff.

Knight, Boland & Riordan, of San Francisco, Cal., for defendant.

ST. SURE, District Judge.

Plaintiff, widow of Dr. William E. Glaeser, the insured, sues defendant to recover $10,000 under the double indemnity clause of the insurance policy issued by defendant on the life of decedent. Defendant has paid the $10,000 face amount of insurance. The policy provides for an additional $10,000 if "the death of the insured occurred * * * as a result directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, * * * provided, however, that no accidental death benefit shall be payable if the death of the insured resulted * * * directly or indirectly from bodily or mental infirmity or disease in any form."

Defendant contends that the death of the insured was not a death by accidental means within the terms of the policy.

The circumstances surrounding Dr. Glaeser's death are as follows: On August 1, 1943, in compliance with a telephoned request from an anonymous person, a police officer called at the residence of Dr. Glaeser and discovered his body on a bed, under the covers, apparently in a normal sleeping position. The body was clothed in underwear and a bathrobe. There was a man's handkerchief in the bed. Standing on the floor, at arm's length from the bed, was a pound bottle of chloroform, from which somewhat less than an ounce had been removed. The cap was on the bottle.

The laboratory test by the city toxicologist showed the presence of chloroform in the body, the amount being undetermined, and 0.125 of one percent of alcohol in the blood, slightly less than an amount which would cause intoxication.

The evidence shows that over a period of from twenty to twenty-five years Dr. Glaeser used chloroform to alleviate pain and suffering and to induce sleep, at intervals ranging from three times a month to three times a week. He administered it by pouring a few drops on a handkerchief and putting the handkerchief over his face. When his wife expressed concern over this habit he assured her that it was not dangerous.

Dr. Bostick, pathologist, performed the autopsy. He testified that decedent's heart was about half again times normal in size; the coronary vessels showed quite a bit of sclerosis, with a complete old occlusion of the anterior descending branch of the left coronary artery, with distal fibrosis. The area of fibrosis and deep scarring occupied an area of two or three inches in diameter. He found no evidence of recent occlusion. There were about 1000 cc. of pleural fluid on the right side, which he said indicated a failing heart over a period of twenty-four hours or more. He found no evidence of irritation in the air tracts, which he said indicated that no particularly irritating substance had been present in the air passage. He found evidence of some fatty infiltration of the liver. He said he noticed no smell of chloroform. His autopsy findings diagnosed the cause of death as "arteriosclerotic heart disease, with old coronary occlusion; myocardial fibrosis, and congestive failure; fatty infiltration of the liver." He testified that decedent had had heart disease of long standing.

He was asked whether the information that chloroform was present in the body

would change his opinion as to the cause of death.

"A. No, it does not change my opinion as to the cause of death, the underlying cause still being that of a coronary occlusion with acute failure.

"Q. Chloroform does have some depressing action on the heart, however, does it not? A. Yes, it does. Knowing the history of chloroform, it might tend to modify my views only to a certain extent; in other words, that chloroform, after all, is a stimulant, a modest irritant, and like any such irritating agent, anything that would arouse emotion, over-acceleration, in that same fashion chloroform might have been a factor that stimulated or caused the immediate arrest of the heart, in other words, a trigger effect.

"Q. In other words, that, acting with a diseased heart, could have caused death? A. Yes.

"Q. But assuming that this man had been inhaling 15 or 20 drops of chloroform, we don't know how much, could you under any circumstances say that that inhalation of that chloroform was the sole cause of this man's death? A. No, under no circumstances the sole cause.

"Q. Even though he had taken a few drops of chloroform you believe that the heart condition and the liver condition contributed to his death? A. I think that a man with such a background of damaged heart and liver was in danger of sudden death at any moment, and that any such extraneous factor as chloroform or some similar substance would only contribute to his death in the sense of acting as a stimulant and no more, and with a normal heart nothing would have happened."

No persuasive expert testimony as to the cause of Dr. Glaeser's death was offered by plaintiff.

■■ The burden of proving death by accidental means is upon plaintiff. New England Mutual Life Ins. Co. v. Flemming, 9 Cir., 102 F.2d 143; Rock v. Travelers' Insurance Co., 172 Cal. 462, 464, 156 P. 1029, L.R.A.1916E, 1196; Reese v. Smith, 9 Cal.2d 324, 70 P.2d 933. It is stated in United States Mutual Accident Ass'n v. Barry, 131 U.S. 100, 9 S.Ct. 755, 762, 33 L. Ed. 60, "that if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means." This rule is followed in California. I think plaintiff has failed to sustain the burden of proof.

■ It is undisputed that Dr. Glaeser voluntarily took the chloroform. There is no showing that he took an overdose—less than an ounce was missing from the bottle. Disregarding for the moment the physical disabilities discovered at the autopsy, if Dr. Glaeser took only the amount of chloroform to which he was accustomed and it caused his death, there was nothing unexpected or unusual in the means used, and the case would fall within the rule of Rock v. Travelers' Insurance Co., supra [172 Cal. 462, 156 P. 1030, L.R.A.1916E, 1196], wherein the following language is adopted: "A person may do certain acts, the result of which acts may produce unforeseen consequences, and may produce what is commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental."

■ Assuming on the other hand that the heart and liver condition caused or contributed to Dr. Glaeser's death, plaintiff is barred from recovery by the clause in the policy excluding death resulting "directly or indirectly from bodily or mental infirmity or disease in any form." As stated in National Masonic Acc. Ass'n v. Shryock, 8 Cir., 73 F. 774, 775, "but if he was affected with a disease or bodily infirmity which caused his death, the association was not liable under this certificate, whether he also suffered an accident or not. If he sustained an accident, but at the time it occurred he was suffering from a pre-existing disease or bodily infirmity, and if the accident would not have caused his death if he had not been affected with the disease or infirmity, but he died because the accident aggravated the effects of the disease, or the disease aggravated the effects of the accident, the express contract was that the association should not be liable for the amount of this insurance. The death in such a case would not be the result of the accident alone, but it would be caused partly by the disease and partly by the accident, and the contract exempted the association from liability therefor."

This case has been repeatedly cited with approval.

Plaintiff relies strongly on Brown v. Continental Casualty Company, 161 La. 229, 108 So. 464, 467, 45 A.L.R. 1521. The facts of that case are similar to those in the present case. A physician was accustomed to inhale chloroform for insomnia and headache, and he died of an overdose of chloroform, or of the chloral which he took with the chloroform. The Louisiana court decided that this was a death by accidental means. However, the present case has two major distinguishing features which necessitate a different conclusion. There is no evidence to show that Dr. Glaeser took an overdose of chloroform. The Louisiana court said in this regard, "In the case before us, there was this element of unexpectedness, that the insured inhaled more chloroform than he expected to inhale. The means or cause of his death was not that he intentionally inhaled chloroform, which he had done many times before, but that he unintentionally inhaled too much chloroform."

Furthermore, the insurance policy in the Louisiana case apparently did not contain a clause excluding death resulting directly or indirectly from bodily infirmity or disease.

Defendant is entitled to judgment, with costs.