[No. A062163. First Dist., Div. Four. Nov. 30, 1994.]

IVAN OLSON, Plaintiff and Respondent, v.
AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA,
Defendant and Appellant.

**COUNSEL**

Jordan J. Yudien for Defendant and Appellant.

Weltin & Van Dam, Weltin, Van Dam & Flores, Brian E. Kerss and Philip R. Weltin for Plaintiff and Respondent.

**OPINION**

**REARDON, J.—**

### INTRODUCTION

This case arises from the failure of the American Bankers Insurance Company of Florida (American Bankers) to pay accident policy benefits after an insured, Phyllis Olson, drowned in a hot tub. Prior to her death, the insured had ingested a quantity of both alcohol and Valium. American Bankers refused payment based upon a policy exclusion for loss caused wholly or in part, directly or indirectly, by intoxicants. After a jury trial, a verdict was returned against the insurance company. American Bankers appealed.

In this appeal, the insurance company asserts several errors, chief among them: (1) whether the presumption of accident instruction given by the trial court was inconsistent with the requirements of the policy; (2) whether the trial court improperly refused to give defendant's proffered instructions on the definition of "accident"; (3) whether the trial court erred by excluding

evidence of a prior warning not to mix alcohol and Valium; and (4) whether the trial court committed error when it instructed that the influence of alcohol had to be the proximate cause of the death.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  *The Drowning*

In the afternoon of July 4, 1986, William and Bobbie Carash arrived at Phyllis and Ivan Olson's home for an Independence Day barbeque. Moments later, Bobbie discovered Phyllis floating facedown in her hot tub, a cigarette still burning in an ashtray nearby and water a couple of feet out and down the steps. The Carashes pulled Phyllis from the water and attempted to revive her without success. Thereafter, the fire department arrived and also attempted resuscitation. These attempts failed.

An autopsy determined that the death was the result of asphyxia due to drowning. Additionally, a toxicological report indicated a .14 blood-alcohol level and a therapeutic amount of diazepam and nordiazepam, commonly known as Valium. The autopsy also disclosed a scrape on her right elbow that occurred within 72 hours of her death. The scrape could have been caused by a fall in the hot tub that immediately precipitated her death. Based on this autopsy, the coroner ruled that the death was accidental.

### B.  *The Insurance Policy*

In 1985, Phyllis and Ivan Olson had purchased an accident policy from American Bankers. This policy would pay off the mortgage of their home in the event of certain covered, nonexcluded occurrences. Titled "CERTIFICATE OF INSURANCE[;] BENEFITS FOR DISABILITY OR DEATH CAUSED BY AN ACCIDENT," relevant policy provisions are as follows: "CONDITIONS NECESSARY FOR PAYMENT: We will pay a benefit as shown below if: [¶] 1. you suffer an injury; [¶] 2. loss covered by this certificate results from this injury . . . . [¶] ACCIDENTAL DEATH BENEFIT: We will pay a benefit for loss of life due to injury. . . . [¶] JOINT ACCIDENTAL DEATH INSURANCE BENEFIT: . . . [¶] We will pay the benefits: [¶] 1. if either the insured debtor or the joint insured dies due to an injury . . . . [¶] DEFINITIONS: This is what we mean when we use these words or phrases: . . . [¶] 'Injury'—bodily injury caused solely by an accident which occurs while the insurance coverage is in force. [¶] 'Loss'—your disability or death. Loss must: [¶] 1. be caused by an injury not excluded under this certificate . . . . [¶] *Exclusions*: This insurance does not cover any loss caused in whole or in part, directly or indirectly, from: . . . [¶] 5. the influence of any intoxicant . . . ."

## C. *Procedural Facts*

American Bankers refused payment on the policy based upon the policy exclusion for alcohol-related losses. After this denial, Ivan Olson (Olson) brought suit. The case was tried before a jury. American Bankers' motions for nonsuit and directed verdict on the claims for breach of contract and breach of the covenant of good faith and fair dealing were denied. The jury found for Olson on the breach of contract claim, awarding damages of $179,490.28.

American Bankers moved for a new trial or, in the alternative, for judgment notwithstanding the verdict. These motions were denied. On May 26, 1993, the trial court amended the judgment and awarded Olson prejudgment interest, for a total sum of $292,987.52 and interest thereafter as allowed by law. In addition, Olson was awarded costs and disbursements of $2,971.22. American Bankers appealed.

## II. DISCUSSION

### A. *Determination of Policy Type*

#### 1. *Background*

The parties disagree as to whether the subject policy is an "accidental means" or an "accidental results/death" policy. This distinction is critical since "policies requiring only that there be proof of accidental death have been construed broadly, 'such that the injury or death is likely to be covered unless the insured virtually intended his injury or death'. . . . [Citation.]" (*Weil* v. *Federal Kemper Life Assurance Co.* (1994) 7 Cal.4th 125, 140 [27 Cal.Rptr.2d 316, 866 P.2d 774].)

The nature of the distinction is between the result to the insured and the means which is the operative cause in producing that result. Under an "accidental means" policy, it is not enough that death or injury is unexpected or unforeseen, but there must be some element of unexpectedness in the preceding act or occurrence which leads to the injury or death. "A person may do certain acts, the result of which acts may produce unforeseen consequences and may produce what is commonly called accidental death, but the *means are exactly what the [person] intended to use, and did use, and was prepared to use.* The means were not accidental, but the result might be accidental." (*Weil* v. *Federal Kemper Life Assurance Co.*, *supra*, 7 Cal.4th at pp. 134-135, quoting *Rock* v. *Travelers' Insurance Co.* (1916) 172 Cal. 462, 465 [156 P. 1029], italics in original, internal quotation marks omitted.)

Although many jurisdictions have expressly rejected or repudiated the distinction between the two types of policies in the face of arguments that any distinction is inherently ambiguous (*Weil* v. *Federal Kemper Life Assurance Co., supra,* 7 Cal.4th at p. 138), the distinction has recently been preserved in California (*id.,* at p. 140). The *Weil* court noted that it had " ' "consistently, uniformly and repeatedly interpreted insurance policies providing benefits for death or injury effected through 'accidental means' without once having suggested that the insuring words were ambiguous." ' " (*Id.,* at p. 139.) Further, the *Weil* court noted that as early as 1916, it had discussed the distinction between the two policies and had determined that language in the policies insuring against death by "accidental means" was "plain." (*Weil* v. *Federal Kemper Life Assurance Co., supra,* 7 Cal.4th at pp. 139-140, citing *Rock* v. *Travelers' Insurance Co., supra,* 172 Cal. at p. 467.) Since *Rock,* a long line of authorities have followed that make clear the distinction between the two types of polices. (See *Hargreaves* v. *Metropolitan Life Ins. Co.* (1980) 104 Cal.App.3d 701, 705-706 [163 Cal.Rptr. 857], and cases cited therein.)

Insurers developed the "limitation of coverage to death or injury by 'accidental means' . . . when it became evident to insurers that a policy providing coverage for accidental death would be construed by the courts to encompass far greater risks [to] insurers [than they] anticipated in issuing this type of policy." (*Weil* v. *Federal Kemper Life Assurance Co., supra,* 7 Cal.4th at p. 134, fn. 5.) "Unless the limitation of coverage of 'accidental means' policies to a narrower class of cases than is covered by 'accidental death' insurance would violate a particular statute or other express public policy, it is not our proper role to mandate that the two types of policies be interpreted as coextensive. By repudiating the distinction, the court in effect would be ignoring the fact that *the policy does employ the word 'means.' "* (*Id.,* at p. 139, italics added.) Thus, California continues to recognize the distinction between the policy types.

The case history of the distinction between "accidental means" and "accidental results" policies is instructive. By employing the phrase "accidental means," insurers can be relatively certain that their policies will be interpreted by the courts to have the limiting effect desired. No such assurance is available when other terms are used. As previously stated, the whole rationale for insurers choosing to employ the phrase in the first place was to define more precisely the risk that was insured.

## 2. *Accidental death policy*

█ The focus of the controversy in the instant case regarding the "accidental means" and "accidental results" distinction is centered in the

trial court instruction that "as a matter of law, a death by drowning, unless suicidal, is presumed to be an accidental death. Therefore, unless the loss of life of Mrs. Olson comes within an exclusion contained in the certificate of insurance, the defendant is legally obligated to pay to plaintiff the promised benefit."

Because the subject insurance policy pays for loss of life due to "bodily injury caused solely by an accident," American Bankers contends that the *means* of death must be accidental. Therefore, American Bankers asserts that Olson was required to prove the occurrence of an accident and was not entitled to this presumption. On the other hand, Olson counters that American Bankers could have limited its liability by employing the term "accidental means." Since it did not use that term, Olson contends that the policy provided coverage against accidental death, regardless of the means involved. We agree with Olson.

To buttress its argument, American Bankers cites a passage in *Weil* as authority for a policy to contain a variant of the phrase "accidental means," and yet remain an "accidental means" policy. The *Weil* court had stated, in reference to the development of the distinction between the two types of policies that: " 'Attempting, therefore, to limit liability by defining more precisely the risk insured, most insurers eliminated the term "accidental death or injury" or "death or injury by accident" and substituted the phrase "injury or death by accidental means" *or some variant thereof.'* [Citation.]" (*Weil* v. *Federal Kemper Life Assurance Co., supra,* 7 Cal.4th at p. 134, fn. 5, italics added.) The "variant thereof" language was in reference to the entire phrase "injury or death by accidental means." It cannot be authority for rejecting the requirement that the term "means" be used. This is especially so considering the case history referred to by the *Weil* court and the carefully preserved distinction between the types of policies. (See *id.,* at pp. 139-140.)

In the subject policy, the phrase American Bankers chose to employ to limit its liability is "bodily injury caused solely by an accident . . . ." This phrase is qualitatively similar to the phrase "death or injury by accident" that insurers sought to avoid because it would be construed by the courts as providing greater coverage than was otherwise intended. Nowhere in its policy does American Bankers employ the word "means" that has historically been used to differentiate between the two types of policies in California.

Because American Bankers failed to use the term "means," the policy is ambiguous. Since uncertainties in an insurance contract are resolved against the insurer and in favor of imposing liability, we hold that the subject policy

is of the "accidental death" variety. (*Southwestern Funding Corp.* v. *Motors Ins. Corp.* (1963) 59 Cal.2d 91, 94 [28 Cal.Rptr. 161, 378 P.2d 361].)

B. *Effect of Policy Determination on Presumption of Accident Instruction*

American Bankers argues that the presumption instruction was incorrect based on the failure to have the jury consider whether Mrs. Olson died by accidental means. Olson responds that the court's instruction on accident was not erroneous.

As stated above, the policy is of the "accidental death" variety. We note that American Bankers has conceded that the death was an accidental death. For instance, a forensic pathologist called by American Bankers testified with respect to the drowning that: "All I can tell is that, at least, consequent to this particular episode, she had not been in there very long after she died. [¶] Q And the episode that you're talking about is the accident of drowning, isn't that true, sir? [¶] A Yes. [¶] Q And, in fact, you have, in your deposition, characterized the drowning as being a non-intentional act or an accident, haven't you, sir? [¶] A Yes." Further, in its opening brief, American Bankers states: "Defendant never questioned that the resulting death was an unintended result, i.e., an 'accidental death.'" Under the circumstances, any potential error in the proceedings or instruction did not result in a "miscarriage of justice." (Cal. Const., art. VI, § 13.)

Moreover, even if the policy was of the "accidental means" variety, there was circumstantial evidence to support a finding against American Bankers in this regard. Olson adduced evidence of a scrape on Phyllis Olson's arm that could have been caused by a fall in the hot tub. Additionally, water that was found a "couple of feet out and then down the steps" could have been caused by a subsequent splash as a result of a fall. This evidence could support a jury's finding that there was a slip or fall that was the operative cause of the death.

C. *Failure to Instruct on Definition of "Accident"*

■ The trial court instructed that it was plaintiff's burden to prove that Mrs. Olson died solely as a result of accident. However, American Bankers asserts that the trial court should have further instructed on the definition of "accident." It proffered two separate instructions in this regard, both of which were refused by the trial court.

In one of its refused instructions, American Bankers requested that the jury be instructed that: "In order to prove that the injury was occasioned

solely through an accident, it must be shown by plaintiff that in the act or acts which *preceded the injury something unforeseen, unexplained or unusual occurred.* Since this is an action on an accident policy, as distinguished from a life policy, the burden rests upon the plaintiff to show not only that Mrs. Olson suffered an accidental death, but also the injury which caused the death was one which was brought about solely through an accident." (Italics added.) This instruction is clearly wrong since it is premised on an "accidental means" insurance policy.

The next refused instruction provided that: "Injury caused by voluntary acts or conduct which is *unaccompanied by anything which is involuntary, unforeseen and unusual* is not the result of an accident." (Italics added.) This instruction as well is premised on an accidental means policy. Therefore, like the preceding instruction, it is also incorrect.

As to any requirement to instruct on the meaning of accident under an "accidental results/death" policy, "the words 'accident' and 'accidental' have never acquired any technical meaning in the law and must be construed according to ordinary understanding and common usage." (*Pilcher* v. *New York Life Ins. Co.* (1972) 25 Cal.App.3d 717, 721 [102 Cal.Rptr. 82], disagreed with on other grounds by *Weil* v. *Federal Kemper Life Assurance Co., supra,* 7 Cal.4th at p. 143.) Thus, further instruction on the definition of "accident" was simply not required.

D. *Exclusion of Evidence of Prior Warning*

Next, American Bankers argues that the exclusion of evidence of a prior warning by Mrs. Olson's physician not to mix alcohol and Valium was prejudicial error. The trial court based its evidentiary ruling on Evidence Code section 352, stating that the "prejudicial effect outweighs any probative and the fact circumstances of this case." The standard for review of an Evidence Code section 352 ruling is abuse of discretion. (*Cain* v. *State Farm Mut. Auto. Ins. Co.* (1975) 47 Cal.App.3d 783, 798 [121 Cal.Rptr. 200].) "Relief is available only where the alleged abuse of discretion clearly constitutes a miscarriage of justice." (*Ibid.*)

Our independent review of the record demonstrates an adequate basis for this ruling. In deposition, the prescribing physician had testified that in April 1978, he had advised Mrs. Olson not to mix alcohol and Valium. We observe that Mrs. Olson's death was in July 1986, some eight years later. Considering the remoteness of the warning, we cannot say that the exclusion of such evidence amounted to an abuse of discretion by the trial court.

E. *Exclusion of Alcohol Under the Policy*

1. *Requirements of Insurance Code when alcohol exclusion is present*

■ American Bankers' next contention is that the trial court erred when it instructed regarding the law applicable to the exclusion clause. The subject insurance policy excludes loss caused by alcohol as follows: "*Exclusions*: This insurance does not cover any loss caused in whole or in part, directly or indirectly, from: [¶] . . . [¶] 5. the influence of any intoxicant . . . ." American Bankers denied coverage based on this exclusionary language. The trial court's instructions to the jury included the above clause coupled with an admonition that: "Under California law, this exclusionary clause is interpreted to mean that the defendant must show that the death of Phyliss [sic] Olson was '*in consequence of*' the influence of alcohol." (Italics added.) American Bankers objected to this instruction, arguing that the policy language is clear and unambiguous. This argument, however, ignores the requirements of the Insurance Code. The propriety of the application of the Insurance Code to the exclusionary language is a matter of law to be determined by the court. (See *Haworth* v. *Lira* (1991) 232 Cal.App.3d 1362, 1367 [284 Cal.Rptr. 62].)

Section 10369.12 of the Insurance Code[1] permits a policy to include an exclusion for intoxicants or controlled substances in the following form: "The insurer shall not be liable for any loss sustained or contracted *in consequence of* the insured's being intoxicated or under the influence of any controlled substance unless administered on the advice of a physician." (Italics added). Section 10369.1 provides that: "Except as provided in Section 10323, no disability policy delivered or issued for delivery to any person in this State shall contain provisions respecting the matters set forth in Sections 10369.2 to *10369.12*, inclusive, *unless such provisions are in the words in which the same appear in such sections*; provided, however, that the insurer may, at its option, use in lieu of any such provision a corresponding *provision of different wording approved by the commissioner*, which is *not less favorable in any respect* to the insured or the beneficiary." (Italics added.) Thus, the Legislature has made a statutory determination on the limits of an alcohol or controlled substance exclusion in an insurance policy issued in California.

It is clear that the alcohol exclusion in the subject policy is within the scope of section 10369.1 since it is a provision with respect to a matter set forth in section 10369.12. American Bankers concedes that section 10369.1 only allows wording different than that provided in section 10369.12, if such

---

[1]Unless otherwise indicated, all further statutory references are to the Insurance Code.

wording is approved by the commissioner. It further acknowledges that the words so approved may not be less favorable to the insured or beneficiary. However, American Bankers contends that it adduced evidence that the policy had been approved by the commissioner through the testimony of its expert on California insurance law, James McCord.

We have examined the testimony of Mr. McCord and we agree with the trial court's statement that "the record is devoid of any evidence as to whether or not this language was approved by the insurance commissioner." Indeed, McCord testified that he was not asked to look into "whether the language of this exclusion comported with California law. [¶] I assumed that it did, and still assume that it does."

Furthermore, as American Bankers itself notes, the words so approved may not be less favorable to the insured or beneficiary. The exclusionary language in the subject policy permits a denial of coverage if the loss was "caused in whole or in part, directly or indirectly" by alcohol. This clearly is less favorable than the language provided in section 10369.12 where loss must be "in consequence of the insured's being intoxicated." Accordingly, the trial court was correct when it instructed that California law requires the policy language to mean that "the defendant must show that the death of Phyliss [*sic*] Olson was 'in consequence of' the influence of alcohol."

## 2. *The proximate cause instruction*

█ In addition to being instructed that Phyllis Olson's death must have been " 'in consequence' of the influence of alcohol," the jury was instructed that this meant that "defendant must prove that the influence of alcohol was *the* proximate cause of the death . . . ." (Italics added.) Proximate cause of a loss was defined for the jury as "the cause which, in natural and continuous sequence, produces the loss, and without which the loss would not have occurred." (See BAJI No. 3.75 (7th ed. 1986) p. 91, use of this instruction disapproved in negligence cases (7th ed. 1994 pocket pt.) p. 40.) American Bankers contends that "the Court . . . made the quantum leap of interpreting the 'in consequence of' language of Section 10369.12 to mean 'the proximate cause.' "

American Bankers notes that there is no California authority interpreting sections 10369.1 or 10369.12. Finding none, American Bankers relies on *Rivers* v. *Conger Life Insurance Company* (Fla.Dist.Ct.App. 1969) 229 So.2d 625, to support its contention. In *Rivers*, an insurance policy contained the following provision: " 'The Agreement as to benefit under this Policy shall be null and void if the Insured's death . . . results directly or indirectly . . .

while under the influence of alcohol . . . .'" (*Id.*, at p. 627.) Since the insured was under the influence of alcohol at the time of death, the insurer objected to liability under the policy, even though it did not prove that the condition of the insured contributed to the fatal injuries. (*Ibid.*)

The *Rivers* court determined, under a statute almost identical to section 10369.12,[2] that the statutory words, " 'in consequence of being intoxicated,' " require an insurer to establish *a causative connection* between the intoxication and the death or injury of the insured in order to deny benefits. (*Rivers* v. *Conger Life Insurance Company*, *supra*, 229 So.2d at p. 628.) Further, the court noted that where a policy does not cover injuries received by the insured as the "result" or "in consequence" of being intoxicated, or "caused" by intoxication, some causal connection must be shown. (*Ibid.*, citing 10 Couch on Insurance (2d ed. 1982) § 41:466 [miscited as 41:457], p. 519.) The court refused what was essentially a strict liability type of approach urged by the insurance company, i.e., that being under the influence of alcohol,[3] without a causative connection, could be reason for an exclusion. (*Rivers* v. *Conger Life Insurance Company*, *supra*, 229 So.2d at p. 628.)

American Bankers makes much of this language, stating that "the passage in *Couch* relied upon by the Florida court interprets the 'in consequence of' language to require a showing of 'some causal connection,' which is something less than 'a' proximate cause, and which is certainly something less than a showing of 'the proximate cause' of death." However, its reliance is misplaced. The court did not analyze whether alcohol, under the statutory language, was required to be *the* or *a* proximate cause, only that *some* or *a* causal connection must exist. Therefore, *Rivers* fails as support for American

---

[2]Under the Florida statute effective at the time, if an insurer provides an alcohol exclusion, the insurer must include the following policy provision: "Intoxicants and Narcotics: The insurer shall not be liable for any loss sustained or contracted in consequence of the insured's being intoxicated or under the influence of any narcotic unless administered on the advice of a physician." (See *Rivers* v. *Conger Life Insurance Company*, *supra*, 229 So.2d at pp. 627-628, fn. 3, internal quotation marks omitted.)

[3]The *Rivers* court also noted that "the term 'intoxicated' is stronger than the term 'under the influence' and describes a person who is under the influence of intoxicating beverages to such an extent that he has lost the normal control of his bodily and mental faculties." (*Rivers* v. *Conger Life Insurance Company*, *supra*, 229 So.2d at p. 628, fn. omitted.) Under this interpretation, the trial court's instruction in this case was actually favorable to American Bankers since it only required that the death be "in consequence of *the influence of alcohol*" rather than "in consequence of *the insured's being intoxicated*" as required by section 10369.12. (Italics added.)

Bankers' contention that "in consequence of" cannot be equated with "the proximate cause."[4]

Also, American Bankers points out that our Supreme Court in *Mitchell* v. *Gonzales* (1991) 54 Cal.3d 1041, 1054 [1 Cal.Rptr.2d 913, 819 P.2d 872], disapproved of the use of the BAJI No. 3.75 proximate cause definition. However, the issue presented in *Mitchell* was "whether BAJI No. 3.75 should be given in *any* negligence action." (54 Cal.3d at p. 1049, italics in original.) The action at bar is a contract action governed by the Insurance Code. As a result, *Mitchell* is not authority for finding the proximate cause definition erroneous.

Further, the proximate cause definition disapproved by the *Mitchell* court was in reaction to the possible confusion that exists when potential multiple causes are present. (*Mitchell* v. *Gonzales, supra,* 54 Cal.3d at p. 1049.) American Bankers notes that "even if BAJI 3.75 had still been viable, the Notes to 3.75 make clear that its use is supposed to be restricted to single-cause cases, not multi-cause cases like the instant case." This argument is conceptually misleading since the issue at bar is solely whether the exclusion applies. The fact that multiple causes may have contributed to the death is irrelevant for the narrow issue that was being decided by the jury. The jury's proper focus was solely on the issue of alcohol.

American Bankers makes no attempt in its reply brief to address cases noted by Olson that squarely address the effects of insurance policy language when excluded and covered perils interact to cause a loss. Section 532 provides: "If a peril is specially excepted in a contract of insurance and there is a loss which would not have occurred but for such peril, such loss is thereby excepted even though the immediate cause of the loss was a peril which was not excepted." In *Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395 [257 Cal.Rptr. 292, 770 P.2d 704], the court noted that, in previously characterizing the "but for" clause of section 532, it had impliedly recognized that "coverage would not exist if . . . an excluded risk was *the efficient proximate (meaning predominant) cause* of the loss. On the other hand, the fact that an excluded risk contributed to the loss would not preclude coverage if such a risk was a remote cause of the loss." (48 Cal.3d at pp. 402-403, italics added, fn. omitted.) We find this language dispositive. The trial court's instruction that the "influence of alcohol was

---

[4]On the other hand, Olson does cite us to authority that directly addresses the question at issue. In *Interstate Life & Accident Insurance Co.* v. *Gammons* (1966) 56 Tenn.App. 441 [408 S.W.2d 397, 399], the court held that under a clause of a health and accident policy providing that an insurer was not liable for loss sustained or contracted "in consequence" of the insured being intoxicated, the insurer was excepted from liability only if it proved that the insured's intoxication was *the*, not *a*, proximate cause of death.

the proximate cause of the death" is qualitatively similar to the language used above. Accordingly, we hold that the trial court did not commit error when it instructed in this regard.

F. *Motion for Nonsuit, Directed Verdict, and Judgment Notwithstanding the Verdict*

American Bankers' final contentions on appeal are that the trial court erroneously denied: (1) its motions for a nonsuit at the conclusion of both plaintiff's opening statement and at the conclusion of plaintiff's case-in-chief, and (2) its motions for a directed verdict, new trial, and judgment notwithstanding the verdict. It based these motions on the grounds that "(1) Plaintiff had failed to adduce any evidence of an accident and (2) that Plaintiff conceded that alcohol was a contributing cause of death, and that this was all that Defendant had to show." We have already determined that the policy was an "accidental death" policy and the effects of that determination upon American Bankers conceding that the death was an accident. Further, we have determined that the Insurance Code required death to be "in consequence of" being intoxicated and not just a contributing factor. Therefore, these final contentions do not merit further discussion. (*People* v. *Rojas* (1981) 118 Cal.App.3d 278, 288-289 [173 Cal.Rptr. 64, 174 Cal.Rptr. 91].)

Judgment affirmed.

Poché, Acting P. J., and Perley, J., concurred.

A petition for a rehearing was denied December 21, 1994, and appellant's petition for review by the Supreme Court was denied February 16, 1995.